UNITED STATES of America,
Plaintiff–Appellee,

v.

Roger Thomas ELEY, Defendant–
Appellant.

No. 91–8536.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1992.

Dale Jenkins, Darien, Ga.; Guy E. Davis, Jr.; and Jerome J. Froelich, Jr., McKenney & Froelich, Atlanta, Ga., for defendant-appellant.

W. Leon Barfield and H. Allen Moye, Asst. U.S. Attys., S.D. Ga., Atlanta, Ga., for plaintiff-appellee.

Before FAY and BIRCH, Circuit Judges, and KAUFMAN,* Senior District Judge.

FRANK A. KAUFMAN, Senior District Judge:

Roger T. Eley was indicted in 1989 by a federal grand jury for the Northern District of Georgia on charges of conspiracy to possess cocaine with the intent to distribute and of conspiracy to launder money. Eley was tried, convicted, and sentenced in the Spring of 1990, upon those conspiracy charges in the Northern District. On December 12, 1990 a federal grand jury for the Southern District of Georgia indicted Eley on charges of conspiracy to import cocaine, of conspiracy to launder money, and of possession with intent to distribute cocaine. Those latter charges arose out of the same course of conduct for which Eley had previously been tried and convicted in the Northern District.

The Northern District indictment, charging only conspiracies, related to the approx-

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting    by designation.

imate period of 1985 to 1988, and involved, *inter alia,* contentions by the government that several persons delivered quantities of cocaine to Eley, who in turn delivered the cocaine to another co-defendant. The Southern District indictment, on the other hand, involved both charges of conspiracy and substantive crime. The substantive charges relating to Eley, which were alleged in that indictment, were that Eley possessed with intent to distribute: six kilograms of cocaine in January–February 1987 (Count 3); three kilograms of cocaine in June 1987 (Count 5); ten kilograms of cocaine in September 1987 (Count 6); and fifteen kilograms of cocaine in February 1988 (Count 7).

Eley moved to dismiss the Southern District indictment on double jeopardy grounds. A United States Magistrate Judge recommended dismissal of the two conspiracy counts but not the substantive possession counts. After Eley filed objections to the Magistrate Judge's Report, the District Judge, following oral argument, adopted the Magistrate Judge's Report and Recommendation. Eley, in this interlocutory appeal, contends that the failure of the court below, that is, the United States District Court for the Southern District of Georgia, to dismiss the indictment in its entirety subjects him to double jeopardy in violation of the Fifth Amendment to the United States Constitution.[1]

## I.

■ The Northern District conspiracy charges were brought under 21 U.S.C. § 846, which provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

During the trial in the Northern District, the government produced evidence that in early 1987 six kilograms of cocaine were delivered to Eley and another co-defendant. The Government has proffered that it will use that same evidence to prove Count 3 of

---

1. *See Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977) ("pretrial orders rejecting claims of former jeopardy ... constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291.").

In addition, Eley asserts in this appeal that the Government should be estopped from prosecuting him in the Southern District because of the time lag between the filing of the complaint against him and the return of the indictment. Further, Eley asserts that judicial economy considerations dictate that the Southern District prosecution not go forward because Eley received a 420 month sentence in the Northern District case, and, given his present age, will not be released from prison until he is 76 years old and will little endanger society. Thus, Eley argues, there is no need to burden the courts with an additional prosecution which will serve no real purpose.

The Government correctly observes that those arguments are inappropriate in this interlocutory appeal because the only issue over which this Court presently has jurisdiction is Eley's double jeopardy claim. See *Abney,* in which the Court wrote:

> Our conclusion that a defendant may seek immediate appellate review of a district court's rejection of his double jeopardy claim is based on the special considerations permeating claims of that nature which justify a departure from the normal rule of finality. Quite obviously, such considerations do not extend beyond the claim of former jeopardy and encompass other claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss.

431 U.S. at 663, 97 S.Ct. at 2042. Nevertheless, we do note at this time the common sense of the comments by the Magistrate Judge in his Report and Recommendation to the District Court below:

> Although the successive prosecution of the substantive narcotics charges violates none of the protections afforded by the double jeopardy clause, the particular methodology of the Sentencing Guidelines could result in little or no benefit to the government for its prosecutive effort.... It is extremely unlikely that any guidelines sentence for the substantive narcotics charges prosecuted in this district would result in a greater period of incarceration than the defendant has already received in connection with his earlier conspiracy conviction.... While the government may have good reason for going to a great deal of time, trouble and expense to obtain a concurrent sentence, it has yet to state that reason to this court.

The government has not stated any such reason to this Court either on brief or when pressed for an explanation at oral argument. This *may* raise an issue for the court below on remand. In that regard we express no comment upon the within appeal.

the Southern District indictment. During the Northern District trial, a witness testified that he delivered to Eley three kilograms of cocaine on one occasion, ten kilograms on another occasion and fifteen kilograms on a third occasion. The Government states that it will use that evidence to prove Counts 5, 6 and 7 of the Southern District indictment.

Eley was sentenced, following his Northern District conviction under the Federal Sentencing Guidelines, to 420 months. That sentence level was reached because the District Court attributed to Eley all of the quantities of cocaine referred to in the preceding paragraph of this opinion.

The Southern District substantive charges are brought under 21 U.S.C. § 841(a)(1), which provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

The gravamen of Eley's argument in this interlocutory appeal is that he is being prosecuted in the Southern District based upon the same evidence for which he was convicted, and upon which the length of his sentence was determined, in the Northern District. As the Government observes, the issues to be decided by this Court in this appeal are whether a prior conviction and a prior sentence for conspiracy precludes subsequent prosecution and sentencing for substantive offenses, the evidence of which was introduced and apparently relied upon in the prior prosecution, conviction and sentencing for the conspiracy.

## II.

The Fifth Amendment to the United States Constitution provides in part that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The Supreme Court has stated that the Double Jeopardy Clause consists of three separate constitutional protections. " 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments *for the same offense.*' " *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2089, 109 L.Ed.2d 548 (1990) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)) (emphasis added).

The starting point for double jeopardy analysis has historically been application of the test enunciated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* (citing *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911)).

More recently, in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990), Justice Brennan wrote: "We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Eley asserts that *Grady* establishes "conduct proved or punished" as the proper standard by which double jeopardy protection should be measured.[2]

The Supreme Court has recently clarified the application of *Grady* as it relates to cases involving multiple prosecutions for substantive offenses, on the one hand, and conspiracy to commit those offenses, on the other hand. In *United States v. Felix,* —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), after discussing *Grady* and other cases predating *Grady,* Chief Justice Rehnquist stated:

But long antedating any of these cases, and not questioned in any of them, is the rule that a substantive crime, and a con-

---

**2.** *See* Brief of Appellant, at 16.

spiracy to commit that crime, are not the "same offense" for double jeopardy purposes.... [W]e choose to adhere to the *Bayer–Pinkerton* line of cases dealing with the distinction between conspiracy to commit an offense and the offense itself. These are separate offenses for double jeopardy purposes.

*Id.* 112 S.Ct. at 1384. In *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), the Supreme Court had observed that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." *Id.* at 542, 67 S.Ct. at 1399. Likewise, in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the Court had written that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses ..." and as such double jeopardy was not a bar. *Id.* at 643, 66 S.Ct. at 1182.

In *Felix*, Chief Justice Rehnquist also alluded to the widely divergent interpretations of *Grady* among the circuits—a number of which are discussed by Eley in his brief in support of this appeal—and concluded:

We think it best not to enmesh in such subtleties the established doctrine that a conspiracy to commit a crime is a separate offense from the crime itself. Thus, in this case, the conspiracy charge against Felix was an offense distinct from any crime for which he had been previously prosecuted, and the Double Jeopardy Clause did not bar his prosecution on that charge.

*Id.* 112 S.Ct. at 1385. In sum, the Supreme Court has made it abundantly clear that whatever evidence is introduced in a trial on a substantive offense, later prosecution for conspiracy based upon the same evidence cannot amount to a double jeopardy violation because the conspiracy and the substantive offense are distinct. Herein the situation is reversed. The prior Northern District charges were for conspiracy. The pending Southern District charges involve substantive crimes. That, however, is a distinction without a difference.

Felix was charged in Missouri with attempting to manufacture methamphetamine in that state. To counter Felix's defense of lack of criminal intent, the prosecution introduced evidence that he had manufactured methamphetamine in Oklahoma earlier during the same year involved in the Missouri case. Felix was convicted of the attempt charge in Missouri. Subsequently, he was indicted in the Eastern District of Oklahoma upon charges of conspiracy to manufacture, possess and distribute methamphetamine. Among the overt acts alleged in support of the conspiracy charge, two relating to Felix were based upon the same conduct which had been utilized during the earlier successful prosecution in Missouri. In addition, Felix was named in the Oklahoma case in seven substantive counts in the indictment, including manufacturing and possession with intent to distribute. During the Oklahoma trial, the Government introduced much of the same evidence, which had been introduced at the Missouri trial, for the purpose of proving in the Oklahoma case substantive offenses which were not prosecuted in the prior Missouri prosecution.

Felix was convicted in the Oklahoma case and appealed to the Court of Appeals for the Tenth Circuit. That court reversed Felix's conviction on several of the counts, based upon its reading of *Grady*, because of "significant duplication of the conduct proved to establish the Missouri offense and most of the Oklahoma convictions." *United States v. Felix*, 926 F.2d 1522, 1529 (10th Cir.1991), *rev'd*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). In addition, that court determined that the two offenses "did not involve distinct persons, places, or times." *Id.* at 1530.

The Supreme Court, reversing the Tenth Circuit, observed that that court had focused its analysis upon the type of evidence introduced by the Government in the two trials rather than upon the crimes prosecuted. In that regard, Chief Justice Rehnquist wrote: "[I]t is clear that, no matter how much evidence of the Oklahoma transactions was introduced by the Government to help show Felix's state of mind, he was

not *prosecuted* in the Missouri trial for any offense other than the Missouri attempt offense with which he was charged." *Felix*, 112 S.Ct. at 1382 (emphasis in original).

The question remains whether that rule differs in any respect when the conspiracy charge is prosecuted first and the substantive offense later. In the bulk of the cases discussing the double jeopardy implications involved in prosecuting conspiracy and substantive offense cases, the conspiracy prosecution seemingly follows—rather than precedes as it does herein—the substantive offense prosecution. In the language in *Felix*—quoted therein from *Bayer*—the Supreme Court does not appear to place any emphasis upon the order of conviction. Rather, the Chief Justice specifically noted in *Felix:*

> [O]ur precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation.
>
> . . . .
>
> [T]he introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct.
>
> That principle is clearly applicable here.

*Felix*, 112 S.Ct. at 1382 & 1383 (footnote omitted).[3] The same is true in the within interlocutory appeal by Eley.

### III.

Eley also asserts that because the determination of his sentence in the Northern District prosecution was based upon the same amounts of cocaine for which prosecution and seemingly punishment, if convictions result, are sought in the Southern District, prosecution and possible subsequent punishment for the substantive offenses involving that cocaine violate the multiple punishment prohibition of the Double Jeopardy Clause.

Eley's sentence in the Northern District was determined under the United States Sentencing Guidelines, which require a court to consider all of the defendant's acts committed during, in preparation for, or in furtherance of the offense of conviction. *See* United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1). Thus, in the light of the fact that the Northern District Court considered the quantities of drugs which are the object of the prosecution in the Southern District in determining the Northern District sentence for Eley's conspiracy conviction, Eley argues that he has already been "punished" for his criminal conduct relating to those quantities of drugs and that the Southern District prosecution, with its possibilities for punishment, involves double jeopardy principles with regard to punishment as well as with regard to prosecution. A threshold difficulty with that contention as to punishment is that "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has the power to prohibit and punishing also the completed transaction...." *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985) (emphasis omitted) (quoting *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 254, 71 L.Ed. 505 (1927)). Also, "the punishment

---

**3.** Footnote 3 in *Felix* is further similarly instructive:

> There is an obvious distinction between *Dowling [v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ] and this case, but one that makes no difference for purposes of our analysis here. In *Dowling*, the defendant was first prosecuted for the Henry robbery, and evidence concerning that robbery was subsequently admitted for Rule 404(b) purposes at a second prosecution. In this case, evidence of the Oklahoma drug transactions was first admitted for Rule 404(b) purposes at the Missouri trial, and Felix was subsequently prosecuted for the Oklahoma drug transactions. The first situation might raise collateral estoppel concerns as a result of an initial acquittal, concerns we confronted in *Dowling*, while the latter situation would not. But both situations would be equally affected by a rule that the admission of evidence concerning a crime under Rule 404(b) constitutes prosecution for that crime; under such a rule, the Double Jeopardy Clause would have barred the subsequent admission of the Henry evidence in *Dowling*, and it would bar the subsequent prosecution of the Oklahoma drug crimes in this case. We decline to adopt such a rule.

*Id.* 112 S.Ct. at 1383 n. 3.

component of the Double Jeopardy Clause is driven by legislative intent. If Congress did intend multiple punishments for a single act, then for purposes of Double Jeopardy analysis the combined punishment would simply be viewed as the appropriate punishment determined by Congress to represent the gravity of the offense and it would be upheld." *United States v. Koonce*, 945 F.2d 1145, 1150 (10th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1695, 118 L.Ed.2d 406 & — U.S. —, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992). "Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes," *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975), which are separately punishable as separate crimes. *See also Koonce*, 945 F.2d at 1154–55 (Congress intended to allow multiple punishments for conspiracy and for substantive possession and distribution offenses).

### IV.

For the reasons stated in this Opinion, Eley's double jeopardy contentions presented in this interlocutory appeal, are hereby deemed without merit. Accordingly, Eley's within appeal is hereby DENIED.

AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS BELOW.