# UNITED STATES *v.* FELIX

No. 90–1599.   Argued January 14, 1992—Decided March 25, 1992

Rehnquist, C. J., delivered the opinion of the Court, in which White, O'Connor, Scalia, Kennedy, Souter, and Thomas, JJ., joined, and in Parts I and II of which Blackmun and Stevens, JJ., joined. Stevens, J., filed an opinion concurring in part and concurring in the judgment, in which Blackmun, J., joined, *post*, p. 392.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Assistant Attorney General Mueller*, and *James A. Feldman.*

*Scott M. Anderson* argued the cause and filed a brief for respondent.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

During the summer of 1987, respondent Frank Dennis Felix operated a facility in Beggs, Oklahoma, at which he manufactured methamphetamine in violation of applicable federal statutes. In July, this facility was raided and shut down by Drug Enforcement Administration (DEA) agents. Felix thereupon ordered precursor chemicals and equipment for the manufacture of methamphetamine to be delivered to him at Joplin, Missouri. DEA agents observed the transfer of these items and arrested Felix shortly afterwards. He was charged and tried in the Western District of Missouri for the offense of attempting to manufacture the illegal drug between August 26 and August 31, 1987. This charge was based upon the delivery of the materials to him at Joplin. He was tried, found guilty, and his conviction and sentence were affirmed by the Court of Appeals for the Eighth Circuit.

In February 1989, Felix was charged in the Eastern District of Oklahoma with both conspiracy and substantive counts in connection with the operation of the facility at Beggs. He was tried and convicted, but the Court of Appeals for the Tenth Circuit reversed most of the counts on which he had been found guilty because of its view that trial on these counts constituted double jeopardy in violation of the Fifth Amendment. We hold that prosecution of a defendant for conspiracy, where certain of the overt acts relied

---

*Edward T. M. Garland* and *Donald F. Samuel* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae.*

upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause.

I

At Felix's trial for attempting to manufacture methamphetamine in Missouri, the Government showed that on August 26, 1987, Felix asked to purchase chemicals and equipment needed for the manufacture of methamphetamine from George Dwinnells, a DEA informant. Felix made a down payment of $7,500 toward the purchase, and in later telephone conversations instructed Dwinnells to deliver the items to a Joplin, Missouri, hotel on August 31, 1987. Dwinnells met Felix at the hotel on that date with the merchandise. After Felix inspected the items and hitched his car to the trailer in which the items had been transported, Government officials arrested him.

Felix's defense in the Missouri case was that "he never had criminal intent, but had been acting under the mistaken belief that he was working in a covert DEA operation." *United States* v. *Felix*, 867 F. 2d 1068, 1074 (CA8 1989). In order to establish Felix's criminal intent with respect to the items delivered in Missouri, the Government introduced evidence that Felix had manufactured methamphetamine in Oklahoma earlier in 1987. See Fed. Rule Evid. 404(b) (Evidence of prior acts is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). The evidence showed that during the spring of 1987, Felix had purchased precursor materials from Dwinnells and had furnished those items to Paul Roach in exchange for lessons on how to manufacture methamphetamine. Roach, who testified for the Government at Felix's Missouri trial, stated that he and Felix had produced methamphetamine in a trailer near Beggs, Oklahoma. Government agents had seized the trailer, which was indeed being used as a methamphetamine lab, on July 13, 1987.

The agents did not arrest Felix at that time, however; he later told Dwinnells that he had avoided arrest by hiding in the nearby woods. In accordance with Rule 404(b), the District Court instructed the jury that the evidence of the Oklahoma transactions was admissible only to show Felix's state of mind with respect to the chemicals and equipment he attempted to purchase in Missouri. The jury convicted Felix, and the Eighth Circuit affirmed. 867 F. 2d, at 1070–1076.

The Government subsequently named Felix in 8 counts of an 11-count indictment filed in the United States District Court for the Eastern District of Oklahoma. Count 1 charged that Felix and five others conspired, between May 1, 1987, and August 31, 1987, to manufacture, possess, and distribute methamphetamine. Felix was named in nine of the overt acts supporting the conspiracy charge; two of those nine overt acts were based on conduct that had been the subject of the earlier Missouri prosecution. Overt act 17 charged that "[o]n August 26, 1987, Frank Dennis Felix, while in Tulsa, Oklahoma, provided money for the purchase of chemicals and equipment necessary in the manufacture of methamphetamine." Overt act 18 charged that "[o]n August 31, 1987, Frank Dennis Felix, while at a location in Missouri, possessed chemicals and equipment necessary in the manufacture of methamphetamine." Along with the conspiracy charge, Felix was named in seven substantive counts. Counts 2 through 5 alleged that on or about July 13, 1987, in the Eastern District of Oklahoma, Felix had manufactured methamphetamine, possessed methamphetamine with intent to distribute it, possessed methamphetamine oil with intent to manufacture methamphetamine, and manufactured phenylacetone, a methamphetamine precursor. Count 6 charged that, between June 1, 1987, and July 13, 1987, in the Eastern District of Oklahoma, Felix and a codefendant had maintained a methamphetamine manufacturing lab. Counts 9 and 10 charged that, on or about June 21, 1987, and July 13,

1987, Felix had traveled from Texas to the Eastern District of Oklahoma with the intent to promote the manufacture of methamphetamine and had thereafter attempted to promote that activity. At trial, the Government introduced much of the same evidence of the Missouri and Oklahoma transactions that had been introduced in the Missouri trial. The jury convicted Felix of all the crimes with which he was charged.

A divided panel of the Court of Appeals for the Tenth Circuit reversed Felix's convictions on counts 1 through 6 of the Oklahoma indictment. The court began by quoting our statement in *Grady* v. *Corbin*, 495 U. S. 508 (1990), that the Double Jeopardy Clause bars a subsequent prosecution where the government, "'to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.'" 926 F. 2d 1522, 1527 (1991) (quoting *Grady* v. *Corbin, supra,* at 521). With respect to count 1, the conspiracy charge, the court observed that in both the Missouri and Oklahoma trials, the Government proved that Felix had learned to make methamphetamine in Oklahoma, had thereafter manufactured the drug at the lab near Beggs, Oklahoma, and had sought to purchase more chemicals and equipment in Missouri after the raid on the Oklahoma lab. Based on the significant duplication of conduct proved in each trial, the court concluded that the Oklahoma conspiracy count was barred under the Double Jeopardy Clause because it charged "the same conduct for which he was previously convicted in Missouri." 926 F. 2d, at 1530. With respect to the substantive offenses charged in counts 2 through 6, the court noted that the direct evidence supporting these charges—the fact that Felix had purchased chemicals and equipment during the spring of 1987, and had subsequently manufactured methamphetamine at the Beggs, Oklahoma, trailer—had been introduced at the previous Missouri trial to show intent. The court concluded that this

duplication "subjected Felix to a successive trial for the same conduct," and therefore reversed Felix's convictions on counts 2 through 6. *Id.*, at 1530–1531.[1]

We granted certiorari, 502 U. S. 806 (1991), to consider whether the Double Jeopardy Clause bars the prosecution of Felix for these crimes.[2] We hold that it does not, and so reverse.

## II

We first consider whether the Double Jeopardy Clause bars Felix's prosecution on the substantive drug offenses contained in counts 2 through 6 of the Oklahoma indictment. The Court of Appeals held that the Government was fore-

---

[1] The Court of Appeals affirmed Felix's convictions on counts 9 and 10 of the indictment, which charged unlawful interstate travel. The court concluded that the conduct alleged in those counts was not sufficiently related to the conduct proved in the earlier Missouri trial to require their dismissal under the Double Jeopardy Clause. 926 F. 2d, at 1531.

[2] The Courts of Appeals have differed in applying *Grady* to successive prosecutions for offenses arising out of a continuing course of conduct, such as the conspiracy prosecution in this case. In *United States* v. *Calderone*, 917 F. 2d 717 (1990), the Second Circuit held that the Double Jeopardy Clause barred a conspiracy prosecution where the defendant had been previously prosecuted for a "broader" conspiracy that entirely encompassed the actions alleged in the second, "narrower" conspiracy. The court based its decision on our language in *Grady*, concluding that the "conduct" at issue in a conspiracy prosecution is not the agreement itself, but the conduct from which the Government asks the jury to infer an agreement. See *id.*, at 721–722. The Second Circuit later followed that reasoning in holding that a conspiracy prosecution is barred if certain overt acts supporting the conspiracy charge involve substantive offenses for which the defendant has been previously prosecuted. *United States* v. *Gambino*, 920 F. 2d 1108 (1990). The Tenth Circuit agreed with that position in upholding Felix's double jeopardy claim below. 926 F. 2d 1522 (1991).

On the other hand, two Courts of Appeals have concluded that the Government is not barred from bringing a successive conspiracy prosecution, even where it seeks to base the conspiracy offense on previously prosecuted conduct. *United States* v. *Rivera-Feliciano*, 930 F. 2d 951 (CA1 1991); *United States* v. *Clark*, 928 F. 2d 639 (CA4 1991).

closed from prosecuting these charges, because it had presented evidence of the Oklahoma drug operation at the prior trial in order to help demonstrate Felix's criminal intent with respect to the Missouri transaction.

At its root, the Double Jeopardy Clause forbids the duplicative prosecution of a defendant for the "same offence." U. S. Const., Amdt. 5; see *Blockburger* v. *United States*, 284 U. S. 299 (1932). An examination of the indictments below shows that Felix was charged in the Missouri case only with attempting to manufacture methamphetamine in Missouri, in late August 1987. App. to Pet. for Cert. 62a–63a. In the five substantive drug counts of the Oklahoma indictment that are at issue here, Felix was charged with various drug offenses that took place in Oklahoma, in June and July 1987. *Id.*, at 55a–57a. The crimes charged in the Oklahoma indictment were related to the operation of the methamphetamine lab near Beggs, Oklahoma, in the summer of 1987, while the crime charged in the Missouri indictment dealt solely with Felix's attempt to purchase chemicals and equipment from Dwinnells in order to continue methamphetamine operations after the Beggs lab was raided. The actual crimes charged in each case were different in both time and place; there was absolutely no common conduct linking the alleged offenses. In short, none of the offenses for which Felix was prosecuted in the Oklahoma indictment is in any sense the "same offence" as the offence for which he was prosecuted in Missouri.

The Court of Appeals appears to have acknowledged as much, as it concentrated not on the actual crimes prosecuted in the separate trials, but instead on the type of evidence presented by the Government during the two trials. The court found it decisive that the Government had introduced evidence of Felix's involvement in the Oklahoma lab to help show criminal intent for purposes of the Missouri trial. But it is clear that, no matter how much evidence of the Oklahoma transactions was introduced by the Government to

help show Felix's state of mind, he was not *prosecuted* in the Missouri trial for any offense other than the Missouri attempt offense with which he was charged.  Thus, the Court of Appeals holding must rest on an assumption that if the Government offers in evidence in one prosecution acts of misconduct that might ultimately be charged as criminal offenses in a second prosecution, the latter prosecution is barred under the Double Jeopardy Clause.

But such an assumption is not supportable; our precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation.  The Court of Appeals relied on the above-quoted language from our opinion in *Grady* v. *Corbin*, 495 U. S., at 521, in reaching its result.  But we think that this is an extravagant reading of *Grady*, which disclaimed any intention of adopting a " 'same evidence' " test.  *Id.*, at 521, and n. 12; accord, *Gavieres* v. *United States*, 220 U. S. 338 (1911).  Our decision two Terms ago in *Dowling* v. *United States*, 493 U. S. 342 (1990), drives home this point.

In that case, Dowling was charged with bank robbery.  To help prove his identity at trial, the Government introduced evidence under Federal Rule of Evidence 404(b) concerning the unrelated robbery of a woman named Vena Henry.  She testified that she had been robbed by a man wearing a knitted mask similar to the one used by the bank robber, and that she had been able to identify the intruder as Dowling after unmasking him during a struggle.  We upheld the introduction of Henry's testimony at the bank robbery trial, despite the fact that Dowling had previously been acquitted of the Henry charges.  The primary ruling of that case was our conclusion that the collateral-estoppel component of the Double Jeopardy Clause offered Dowling no protection despite his earlier acquittal, because the relevance of evidence offered under Rule 404(b) was governed by a lower standard of proof than that required for a conviction.  See 493 U. S., at 348–349 (citing *Huddleston* v. *United States*, 485 U. S. 681,

689 (1988)). But it is clear that we would not have had to reach the collateral-estoppel question if the mere introduction, pursuant to Rule 404(b), of evidence concerning the Henry robbery constituted a second prosecution of that crime for purposes of the Double Jeopardy Clause. Underlying our approval of the Henry evidence in *Dowling* is an endorsement of the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct.[3]

That principle is clearly applicable here. At the Missouri trial, the Government did not in any way *prosecute* Felix for the Oklahoma methamphetamine transactions; it simply introduced those transactions as prior acts evidence under Rule 404(b). The Government was therefore free to prosecute Felix in the trial below for the substantive drug crimes detailed in counts 2 through 6.

## III

We next examine whether the Court of Appeals erred in holding that the Double Jeopardy Clause bars the prosecution of Felix for the conspiracy charge contained in count 1 of the indictment. Here, too, that court—with considerable

---

[3] There is an obvious distinction between *Dowling* and this case, but one that makes no difference for purposes of our analysis here. In *Dowling*, the defendant was first prosecuted for the Henry robbery, and evidence concerning that robbery was subsequently admitted for Rule 404(b) purposes at a second prosecution. In this case, evidence of the Oklahoma drug transactions was first admitted for Rule 404(b) purposes at the Missouri trial, and Felix was subsequently prosecuted for the Oklahoma drug transactions. The first situation might raise collateral-estoppel concerns as a result of an initial acquittal, concerns we confronted in *Dowling*, while the latter situation would not. But both situations would be equally affected by a rule that the admission of evidence concerning a crime under Rule 404(b) constitutes prosecution for that crime; under such a rule, the Double Jeopardy Clause would have barred the subsequent admission of the Henry evidence in *Dowling*, and it would bar the subsequent prosecution of the Oklahoma drug crimes in this case. We decline to adopt such a rule.

justification—relied upon language from our *Grady* opinion to support its conclusion. There is no doubt that the conspiracy charge presents a more difficult question than the substantive drug offenses dealt with in Part II above, because with respect to it there exists more than a mere overlap in evidence. Of the nine overt acts supporting the conspiracy charge against Felix, two were based on the conduct for which he had been previously prosecuted in Missouri. But we hold that because of long established precedent in this area, which was not questioned in *Grady*, Felix's claim of double jeopardy fails.

Felix contends, and the Court of Appeals agreed, that language from *Grady* bars the conspiracy prosecution. There we said that the Double Jeopardy Clause bars a prosecution where the Government, "to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U. S., at 521. Taken out of context, and read literally, this language supports the defense of double jeopardy. But we decline to read the language so expansively, because of the context in which *Grady* arose and because of difficulties which have already arisen in its interpretation.

*Grady* involved a defendant who had driven his car across the median line of a two-way highway and struck an oncoming car, killing one of the occupants. The State charged the defendant with driving while intoxicated and with failing to keep right of the median, and the defendant pleaded guilty to those two traffic violations. Two months later, the State prosecuted the defendant on homicide and assault charges arising from the accident, and the defendant argued that this was a violation of his rights under the Double Jeopardy Clause. In our decision, we recognized our previous holdings that the traditional *Blockburger* test governing double jeopardy claims bars a subsequent prosecution if one of the two offenses is a lesser included offense of the other. See

*Grady* v. *Corbin, supra,* at 519 (citing *Brown* v. *Ohio,* 432 U. S. 161 (1977); *Harris* v. *Oklahoma,* 433 U. S. 682 (1977)). Although the traffic offenses involved in *Grady* were not technically lesser included offenses of the homicide and assault charges, we analogized the case to the situation we had previously confronted in *Illinois* v. *Vitale,* 447 U. S. 410 (1980). There, the State sought to prosecute the defendant for involuntary manslaughter after a car accident. We stated, in dicta, that if the State found it necessary to rely on a previous failure to reduce speed conviction to sustain the manslaughter charge, the Double Jeopardy Clause might protect the defendant. See *id.,* at 420. Despite the fact that neither offense was technically a lesser included offense of the other, we observed that, in such a circumstance, the failure to slow offense might be viewed as a "species of lesser-included offense." *Ibid.* In *Grady,* the State sought to rely on the two previous traffic offense convictions to sustain the homicide and assault charges, presenting the situation about which we had speculated in *Vitale.* In concluding that the Double Jeopardy Clause barred the subsequent homicide and assault prosecutions, we simply adopted the suggestion we had previously made in dicta in *Vitale.* *Grady* v. *Corbin, supra,* at 521.

But long antedating any of these cases, and not questioned in any of them, is the rule that a substantive crime and a conspiracy to commit that crime are not the "same offence" for double jeopardy purposes.

For example, in *United States* v. *Bayer,* 331 U. S. 532 (1947), a military officer had been convicted in court-martial proceedings of discrediting the military service by accepting payments in return for transferring soldiers to noncombat units. We held that his subsequent prosecution in federal court on charges of conspiring to defraud the Government of his faithful services was not barred by the Double Jeopardy Clause, despite the fact that it was based on the same underlying incidents, because the "essence" of a conspiracy offense

"is in the agreement or confederation to commit a crime." *Id.,* at 542. In language applicable here, we pointedly stated that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." *Ibid.;* see also *Pinkerton* v. *United States,* 328 U. S. 640, 643 (1946) ("[T]he commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses . . . [a]nd the plea of double jeopardy is no defense to a conviction for both offenses"). We have continued to recognize this principle over the years. See *Iannelli* v. *United States,* 420 U. S. 770, 777–779 (1975); *Garrett* v. *United States,* 471 U. S. 773, 778 (1985) ("[C]onspiracy is a distinct offense from the completed object of the conspiracy"); cf. *id.,* at 793 ("[I]t does not violate the Double Jeopardy Clause . . . to prosecute [a continuing criminal enterprise] offense after a prior conviction for one of the predicate offenses").

In a related context, we recently cautioned against "ready transposition of the 'lesser included offense' principles of double jeopardy from the classically simple situation presented in *Brown* [v. *Ohio*] to the multilayered conduct, both as to time and to place, involved in [continuing criminal enterprise (CCE) prosecutions]." *Id.,* at 789. The great majority of conspiracy prosecutions involve similar allegations of multilayered conduct as to time and place; the conspiracy charge against Felix is a perfect example. Reliance on the lesser included offense analysis, however useful in the context of a "single course of conduct," is therefore much less helpful in analyzing subsequent conspiracy prosecutions that are supported by previously prosecuted overt acts, just as it falls short in examining CCE offenses that are based on previously prosecuted predicate acts. *Id.,* at 788–789.

Faced with the necessity of reconciling this longstanding authority with our language in *Grady,* we choose to adhere to the *Bayer-Pinkerton* line of cases dealing with the distinction between conspiracy to commit an offense and the

offense itself. These are separate offenses for double jeopardy purposes. The majority in the Court of Appeals below essentially read *Grady* as substituting for the "same offence" language of the Double Jeopardy Clause a test based on whether the two prosecutions involve the "same conduct." The dissenting judge in the Court of Appeals thought that this was an oversimplification, pointing to the fact that the word "conduct" in the previously quoted sentence from *Grady* is modified by the phrase " 'that constitutes an offense for which the defendant has already been prosecuted.' " 926 F. 2d, at 1532 (Anderson, J., dissenting) (quoting *Grady* v. *Corbin*, 495 U. S., at 521). The Court of Appeals for the Second Circuit, in *United States* v. *Calderone*, 917 F. 2d 717 (1990), upheld a claim of double jeopardy by a divided vote, with each judge on the panel writing an opinion interpreting the crucial language from *Grady* differently. That court decided that the "conduct" at issue in a conspiracy prosecution is not the agreement itself, but the conduct from which the Government asks the jury to infer that there was an agreement. 917 F. 2d, at 721. Judge Newman filed a concurring opinion, concluding that *Grady* bars a subsequent prosecution only when previously prosecuted conduct will be used to establish the *entirety* of an element of the second crime. See 917 F. 2d, at 723–725 (Newman, J., concurring). Other Courts of Appeals, as described in more detail in n. 2, *supra*, have rejected double jeopardy claims in similar situations. It appears that while *Grady* eschewed a "same evidence" test and *Garrett* rejected a " 'single transaction' " test, *Garrett* v. *United States, supra*, at 790, the line between those tests and the "same conduct" language of *Grady* is not easy to discern.

We think it best not to enmesh in such subtleties the established doctrine that a conspiracy to commit a crime is a separate offense from the crime itself. Thus, in this case, the conspiracy charge against Felix was an offense distinct from any crime for which he had been previously prosecuted, and

the Double Jeopardy Clause did not bar his prosecution on that charge.

The judgment of the Court of Appeals is accordingly

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, concurring in part and concurring in the judgment.

While I join Parts I and II of the Court's opinion, I do not join Part III because I do not think there is "considerable justification," *ante*, at 387–388, for the Court of Appeals' conclusion that the Double Jeopardy Clause, as interpreted in *Grady* v. *Corbin*, 495 U. S. 508 (1990), bars prosecution of Felix for the conspiracy charge contained in count 1 of the indictment. In *Grady*, we held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 495 U. S., at 510. But as the dissenting opinion of the Court of Appeals explained, "the overt acts at issue here did not meaningfully 'establish' an essential element of the conspiracy" because there is no overt act requirement in the federal drug conspiracy statute and the overt acts did not establish an agreement between Felix and his co-conspirators. 926 F. 2d 1522, 1536 (CA10 1991) (Anderson, J., dissenting). I would thus reverse for the reasons explained in Parts I and II of the Court's opinion, *ante*, at 381–387, and Part III–B of the dissenting opinion of the Court of Appeals, 926 F. 2d, at 1536–1539.