986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Edward CLONTS, Defendant-Appellant.
 No. 91-2258.
 United States Court of Appeals, Tenth Circuit.
 Dec. 29, 1992.
 
 Before SEYMOUR and JOHN P. MOORE, Circuit Judges, and THEIS, District Judge.*
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Charles Edward Clonts appeals his drug conspiracy conviction raising issues of double jeopardy, the admission of Rule 404(b) evidence, and claims of outrageous government conduct. We are unable to decide the double jeopardy issue without findings of fact; therefore, we remand this matter to the district court for further proceedings and defer ruling on the remaining issues.
 
 
 2
 On June 29, 1990, U.S. Customs Service Agent James Searles, acting in an undercover capacity, met with Oscar Bernal and Charles Clonts to discuss a narcotics transaction. Mr. Clonts informed Agent Searles that he and Mr. Bernal were partners in a marijuana smuggling organization. He also told Agent Searles that the organization recently had lost two airplanes and 700 pounds of marijuana during a smuggling operation, and thus he and Mr. Bernal were so financially insolvent they could not afford to pay the maintenance bill on their remaining aircraft.
 
 
 3
 Mr. Clonts then asked Agent Searles if he would "front" the organization money to bring up a load of marijuana. Agent Searles countered by offering to sell 1,000 pounds of marijuana to the organization.
 
 
 4
 At this point, Mr. Bernal joined the meeting and was introduced to Agent Searles. Mr. Bernal also stated that he and Mr. Clonts were partners in a marijuana smuggling operation which used airplanes to bring marijuana into the country from Mexico. Mr. Bernal told Agent Searles that their aircraft had crashed, and they were unable to get their remaining aircraft "out of hock." Both Mr. Bernal and Mr. Clonts stated they would obtain buyers for the 1,000 pounds of marijuana and arrange for its transportation.
 
 
 5
 On July 13, 1990, Mr. Bernal contacted Agent Searles to inform him the money for the deal had arrived. At the arranged meeting place, Mr. Bernal and several coconspirators were arrested. However, Mr. Clonts was not present at the scene of the arrest.[1]
 
 
 6
 Mr. Clonts was at the Las Cruces airport engaged in another marijuana deal. On the previous day, Mr. Clonts asked Agent Searles to front him twenty-five pounds of marijuana to sell in Tucson. That same day, Mr. Clonts contacted an acquaintance, Steve Webster, a pilot, who agreed to fly twenty-five pounds of marijuana from the Las Cruces airport out to his home in Aleka, New Mexico, a distance of approximately twenty-seven miles.
 
 
 7
 The following day, Agent Searles called Mr. Clonts and offered to front him one hundred pounds of marijuana. Mr. Clonts accepted the offer, and Mr. Webster agreed to fly the load. After the arrests of defendant's coconspirators, Agent Searles delivered one hundred pounds of marijuana to Mr. Clonts at the Las Cruces airport. This load was part of the 1,000 pounds which had earlier been delivered to Mr. Clonts' codefendants. The marijuana was loaded onto the plane, and both Mr. Webster and Mr. Clonts were arrested. The two men were charged with conspiring to distribute and possession with intent to distribute less than fifty kilograms of marijuana from on or about the 12th day of July, 1990, through on or about the 13th day of July, 1990.
 
 
 8
 Mr. Clonts moved to join the case involving the one hundred pound transaction with the present case, claiming the interlocking nature of the two cases would make much of the testimony identical. The trial court denied the motion.
 
 
 9
 In both cases, Agent Searles testified concerning his contacts with Mr. Clonts from June 29, 1990, to July 13, 1990, and the events leading up to the arrests in both cases. He stated that Mr. Clonts arranged the second deal "so that we can keep our relationship going."
 
 
 10
 Mr. Webster entered a guilty plea and testified against defendant in both cases. He testified that defendant told him that the one hundred pounds of marijuana were being fronted to him as a reward for setting up the one thousand pound deal.
 
 
 11
 Mr. Clonts was sentenced to forty-one months of imprisonment with three years of supervised release after conviction on the one hundred pound transaction. In the present case, he was sentenced to seventy-eight months' imprisonment, followed by four years of supervised release.
 
 
 12
 Prior to trial in this case, and after conviction on the one hundred pound transaction, Mr. Clonts filed a motion to dismiss on the ground prosecution in this case would violate the Double Jeopardy Clause. The trial court summarily denied the motion without setting forth findings upon which its decision was made or reasons for its conclusion.
 
 
 13
 The Double Jeopardy Clause protects against multiple punishments for the "same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Under the traditional Blockburger test, Blockburger v. United States, 284 U.S. 299 (1932), if two offenses have identical statutory elements, or if one is a lesser included offense of the other, then the subsequent prosecution is barred. Grady v. Corbin, 495 U.S. 508, ----, 110 S.Ct. 2084, 2090 (1990). However, the Court has since held that "a subsequent prosecution must do more than merely survive the Blockburger test." Grady, 110 S.Ct. at 2093.
 
 
 14
 In Grady, a defendant who had driven his car across the median line of a two-way highway struck an oncoming car, killing one of the occupants. The State charged the defendant with driving while intoxicated and failing to keep right of the median, and the defendant pled guilty to those two traffic violations. Two months later, the State prosecuted the defendant on homicide and assault charges arising from the accident, and defendant argued this violated the Double Jeopardy Clause.
 
 
 15
 Citing to dicta in Illinois v. Vitale, 447 U.S. 410 (1980), the Court stated that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Grady, 110 S.Ct. at 2093. Emphasizing this is not a "same evidence test," the Court stated the critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. Id. Because the State admitted it would prove the entirety of the conduct for which Mr. Corbin was convicted--driving while intoxicated and failing to keep right of the median--to establish essential elements of the homicide and assault offenses, the Court found the Double Jeopardy Clause barred the subsequent prosecution. Id. at 2094.
 
 
 16
 In United States v. Felix, --- U.S. ----, 112 S.Ct. 1377, 1383-84 (1992), the Court declined to read Grady expansively because of the context in which it arose and the difficulties which resulted in its interpretation. In Felix, the defendant operated a methamphetamine facility in Beggs, Oklahoma, which was closed during a DEA raid. Shortly thereafter, defendant ordered precursor chemicals and equipment for the manufacture of methamphetamine to be delivered to him in Joplin, Missouri. DEA agents observed the transfer of these items and arrested defendant shortly afterwards. He was charged and tried in Missouri for the offense of attempting to manufacture the illegal drug, based on the delivery of materials to him at Joplin. At trial, pursuant to Rule 404(b), the government introduced evidence that defendant had manufactured methamphetamine in Oklahoma earlier in the year in order to establish intent.
 
 
 17
 Subsequently, defendant was charged in Oklahoma with both conspiracy and substantive counts in connection with the operation of the Beggs facility. All seven of the substantive counts in which defendant was named alleged drug violations that occurred within Oklahoma at the Beggs facility. In the conspiracy count, defendant was named in nine of the overt acts supporting the conspiracy charged. Two of those nine overt acts were based on conduct that had been the subject of the earlier Missouri prosecution.
 
 
 18
 Addressing defendant's challenge to the substantive convictions, the Court noted that while defendant was charged in the Missouri case only with attempting to manufacture the drug in Missouri, in late August of 1987, the substantive drug counts in the Oklahoma indictment charged defendant with various drug offenses that took place in Oklahoma in June and July of 1987. The Court found that the actual crimes charged in each case were different in both time and place, and there was "no common conduct linking the alleged offenses." Id. at 1382 (emphasis added). Thus, none of the offenses for which defendant was prosecuted in the Oklahoma indictment was in any sense the "same offense" as the offense for which he was prosecuted in Missouri.
 
 
 19
 Responding to defendant's double jeopardy challenge of the conspiracy conviction, the Court held that "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause." Felix, 112 S.Ct. at 1380 (emphasis added). Although recognizing that taken out of context and read literally, Grady would support the defense of double jeopardy on this count, the Court based its decision on the long-standing rule that "a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes." Id. at 1383-84.
 
 
 20
 In the present case, Mr. Clonts advances two related arguments. First, he argues the two prosecutions involve offenses linked by common conduct and thus violate the Double Jeopardy Clause. Second, he argues the transactions at issue in both cases were part of a single conspiracy and thus part of a single offense.
 
 
 21
 First, Mr. Clonts contends that unlike Felix, this case involves successive prosecutions brought on the same charge, conspiracy, thus necessitating proof of the same elements as prohibited in Grady. He asserts the times, places, and conduct involved in the conspiracy charged in this case are closely linked with those in the previous case. Additionally, he argues the one thousand pound deal was the factual basis for the one hundred pound deal. Further, Mr. Clonts argues his goal in both deals was the same: to realize a financial profit. Thus, he contends this case involves common conduct already prosecuted in the first case.
 
 
 22
 Second, Mr. Clonts contends both marijuana deals were part of a single, overall continuous scheme to distribute marijuana in the Tucson area. He alleges the goal behind both transactions was to maintain a continuing business relationship with Agent Searles to realize profit from marijuana distribution. See United States v. Beachner Const. Co., 729 F.2d 1278, 1281 (10th Cir.1984) ("the pertinent inquiry is whether the record ... is sufficient to establish that [all conspirators] had a single, common and continuing objective.... If so, there would be but one conspiracy even though its purposes were advanced ... by diverse parties."). Mr. Clonts claims the fact that Mr. Webster did not participate in the one thousand pound deal is not determinative because continuity of conspiracy does not require complete continuity of membership and Mr. Webster played a insubstantial part in the one hundred pound deal.
 
 
 23
 Further, Mr. Clonts argues the numerous commonalities between the two transactions compel the conclusion they were the product of the same conspiracy. He contends the one hundred pound transaction occurred within the same time frame as the other transaction; the supplier was the same; there was extensive overlap in conduct; the one hundred pound deal resulted from the negotiations, groundwork, and working relationship established in connection with the one thousand pound deal; the method of operation was the same for both deals; identical jargon was used in negotiating both deals; and identical marijuana was delivered in both cases. Thus, Mr. Clonts claims he was involved in a single, continuing conspiracy to buy and sell marijuana for profit.
 
 
 24
 The government counters the trial court properly rejected Mr. Clonts' claim because the evidence shows there were indeed two separate conspiracies. The prosecution contends the two cases differed in identity and number of coconspirators, amounts of marijuana, plan, method of transportation and transfer, and goals. The government argues that although the time frame of both transactions overlapped, the duration of the two conspiracies and the place of occurrence differed.
 
 
 25
 The government further asserts while defendant's assistance in the one thousand pound conspiracy was for an immediate financial benefit which permitted recovery of the organization's aircraft, Mr. Clonts' conspiracy with Mr. Webster had the distinct and separate goal of establishing a special relationship with Agent Searles. Prior to the conclusion of the one thousand pound deal, Mr. Clonts told Agent Searles he feared Agent Searles would be cheated, and the profit would be reduced. Mr. Clonts also stated that he felt he was being eliminated from the one thousand pound conspiracy. Thus, the government contends the second conspiracy's goal was to establish a separate, long-range business relationship with the Agent.
 
 
 26
 The prosecution also argues the distinguishing factor in this case is the difference in players. Because Mr. Webster was unaware of the larger marijuana deal until he and Mr. Clonts were en route to pick up the one hundred pounds of marijuana, the government contends there is no evidence of a core of interdependent conspirators sharing a common objective. It argues the fact that Agent Searles was the common source for the marijuana is not controlling because he was not a conspirator. Thus, because the identities of the coconspirators do not overlap in the two transactions, the agreements necessarily were separate.
 
 
 27
 The government contends Grady is distinguishable because it involved a single transaction. Mr. Clonts' conduct in assisting the one thousand pound deal and initiating the one hundred pound deal was not the same. Further, the government urges the fact that the same marijuana was involved in both transactions is irrelevant. Finally, it claims that Felix supports the proposition that drug conspiracies which overlap in place and time may be "multilayered conduct" and thus separate offenses.
 
 
 28
 Mr. Clonts responds that both transactions were conducted to establish an ongoing relationship to buy and sell marijuana for profit. During the course of the negotiations on the one thousand pound deal, several coconspirators expressed their expectation of establishing a future business relationship with Agent Searles. Mr. Clonts claims the government's position that immediate financial profit did not enter into the objective behind the one hundred pound deal is "manifestly ludicrous" and is contradicted by the prosecutor's own remarks during closing argument.
 
 
 29
 Mr. Clonts contends the differing amounts of marijuana involved do not negate the existence of a single conspiracy. Although the duration of the two transactions differed, Mr. Clonts claims the government's position overlooks the fact the one hundred pound deal could be accomplished in such a short time only because it was so closely connected to the one thousand pound deal.
 
 
 30
 After reviewing the record and the briefs, we have come to two conclusions. First, we do not agree with Mr. Clonts that the two offenses involve successive prosecutions brought on the same charge. Second, whether the transactions charged in the two indictments were part of one conspiracy or two separate conspiracies is essentially a matter of fact.
 
 
 31
 The indictments in the two offenses charge different participants, differing amounts of marijuana, and different, although overlapping times. The government carefully limited the existence of the one hundred pound conspiracy to July 12 and 13, 1990. The other conspiracy was alleged to have existed between June 29, 1990, to July 13, 1990. Although the transactions charged were similar, we cannot agree the charges in the two indictments are the same.
 
 
 32
 That resolution does not help us, however, because the real issue is whether the conspiracies alleged in the two cases were separate or the same. That determination is dependent upon resolution of factual issues beyond our scope. Therefore, we must remand this matter for specific findings. In doing so, we are not suggesting any particular result; however, the district court must resolve those disputes raised by the parties and noted here.
 
 
 33
 Mr. Clonts has raised other issues which may be mooted should the district court find he participated in only one conspiracy. Therefore, we defer ruling on those issues.
 
 
 34
 This cause is REMANDED to the district court to hold a hearing to determine the factual issues outlined in this order and judgment. The district court shall proceed as quickly as its docket will permit. In the meantime, the parties shall, within ninety days, or sooner if circumstances permit, file with this court a report indicating the status of this case. If the district court concludes the issues contrary to the contentions of Mr. Clonts, he shall have ten days thereafter to file notice thereof with this court and seek reinstatement of his appeal. In the meantime, the Clerk shall hold this case in abeyance.
 
 
 
 *
 Honorable Frank G. Theis, Senior Judge for the United States District Court, District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In connection with the 1,000 pounds of marijuana, Mr. Clonts and seven coconspirators were charged with conspiring to distribute more than 100 kilograms of marijuana from on or about June 29, 1990, to July 13, 1990