626 So.2d 1013 (1993)
STATE of Florida, Appellant,
v.
Renee Eliane COUPAL, Appellee.
No. 92-03677.
District Court of Appeal of Florida, Second District.
November 5, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for appellant.
Ralph W. Rinehart, Tampa, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, State of Florida, appeals an order of the County Court of Pinellas County that was certified to us as presenting a question of great public importance. Fla. R.App.P. 9.160. We have accepted jurisdiction. The question certified is as follows:
WHETHER THE DOUBLE JEOPARDY CLAUSE BARS TRIAL OF AN OFFENDER ON A CRIMINAL TRAFFIC OFFENSE WHERE THE OFFENDER HAS PREVIOUSLY ENTERED A PLEA OF GUILTY TO A TRAFFIC INFRACTION ON WHICH THE STATE WILL RELY TO PROVE AN ELEMENT OF THE CRIMINAL TRAFFIC OFFENSE?
We slightly reframe the certified question as follows:
WHETHER THE DOUBLE JEOPARDY CLAUSE BARS THE SUBSEQUENT PROSECUTION OF AN OFFENDER FOR A CRIMINAL TRAFFIC OFFENSE WHERE THE OFFENDER HAS PREVIOUSLY ENTERED A PLEA OF GUILTY TO A NONCRIMINAL TRAFFIC INFRACTION, AND THE STATE WILL PARTIALLY RELY ON *1014 THOSE UNDERLYING FACTUAL CIRCUMSTANCES TO PROVE AN ELEMENT OF THE CRIMINAL TRAFFIC OFFENSE IN THE SUBSEQUENT PROSECUTION?
We answer the question in the negative, holding that a subsequent prosecution is permissible.
Following a legal traffic stop for speeding, appellee, Renee Eliane Coupal, was charged by uniform traffic citation with the noncriminal offenses of unlawful speed and failure to maintain a single lane. Coupal then took and failed a field sobriety test; she refused to perform an intoxilyzer test. The Largo police officer who stopped Coupal for speeding then arrested her and issued her a uniform traffic citation charging her with the criminal traffic offense of driving under the influence (DUI). § 316.193, Fla. Stat. (1991).
In early October 1991, Coupal elected to dispose of the two noncriminal traffic infractions (failure to maintain a single lane and unlawful speed) without a hearing under sections 318.14 and 318.18, Florida Statutes (1991). As a result, she paid a $59 civil penalty for failure to maintain a single lane, and she elected to take a defensive driving course for the unlawful speed violation. About a week later, Coupal, through her attorney, entered a written plea of not guilty to the criminal DUI charge and requested a jury trial. About five weeks later, Coupal filed a motion to dismiss the DUI charge on double jeopardy grounds, arguing that the facts underlying the two noncriminal offenses to which Coupal had already pled no contest would be used to prove the DUI charge. The state elected to prosecute the DUI offense by Uniform Traffic Citation in lieu of filing an information. On September 11, 1992, the county court dismissed the DUI charge on double jeopardy grounds.
In so ruling, the trial judge relied on two United States Supreme Court opinions: Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) and United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Grady is the often criticized, now overruled (see United States v. Dixon, 509 U.S. ___, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) case that added, in a double jeopardy review, an additional test to apply once the traditional Blockburger[1] test was satisfied. In following the Grady analysis, even if Blockburger would allow the subsequent prosecution, Grady would not allow it if the government would, in proving an essential element of the offense charged in that subsequent prosecution, prove conduct constituting an offense for which the defendant had already been prosecuted.
Although it is conceded here that Blockburger would allow the subsequent DUI prosecution to proceed, thus leading to application of the Grady analysis, we conclude for two reasons that Grady would not apply to bar the subsequent DUI prosecution here even if Grady had not been overruled by Dixon.
The first reason that Grady does not apply derives from our reading of United States v. Felix, 503 U.S. ___, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), where the Supreme Court said that it was an "extravagant reading of Grady" to construe it to prohibit the mere overlap in proof between two prosecutions. We conclude that the instant case involves a mere overlap of proof. The Felix court emphasized that Grady had not enunciated a "same evidence" prohibition for subsequent prosecutions and endorsed, in a double jeopardy context, "the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." 503 U.S. at ___, 112 S.Ct. at 1382, 118 L.Ed.2d at 34 (footnote omitted). Judge Newman in his concurring opinion in United States v. Calderone, 917 F.2d 717 (2d Cir.1990), cert. granted and judgment vacated, ___ U.S. ___, 112 S.Ct. 1657, 118 L.Ed.2d 381 (1992); abrogated by U.S. v. Felix, enunciates what we conclude is a correct analysis of the "same evidence" versus *1015 "same conduct" evidentiary standard as follows:
I think the word "element" was chosen with some care and must be read technically to avoid letting the Grady test become a "same evidence test," a result that Grady explicitly disclaims. [495 U.S. at 520 n. 12] 110 S.Ct. at 2093 n. 12. Grady itself illustrates a precise use of the concept of "element." Grady was first prosecuted for driving while intoxicated and failing to drive on the right. The subsequent homicide and assault charges required reckless or negligent acts to be established as elements of the subsequent offenses. What Grady holds is that the State may not use Corbin's conduct in driving while intoxicated or driving across the center line to establish these required elements of the subsequent offenses. Grady does not bar the State from introducing in the second trial evidence that Corbin was intoxicated or drove across the center line, but these acts (or that conduct) cannot be the elements of reckless or negligent action underlying the homicide and assault charges.
Justice Scalia's dissent assails the idea that the "element" component of the Grady test is a real limitation. As he points out, "All evidence pertaining to guilt seeks `to establish an essential element of [the] offense,' and should be excluded if it does not have that tendency." [495 U.S. at 539] 110 S.Ct. at 2103. He may well be right, but he is in dissent. I think we are obliged to apply Grady in a way that gives the "element" component significance. That means barring the second prosecution only when the conduct previously prosecuted is to be used to "establish" the element of the second crime, which I think must mean "constitute the entirety of" the element. If Grady is read more broadly, that is, if the second prosecution is barred whenever the previously prosecuted conduct is to be used only as evidence of an element of the second offense, then we would almost be applying a "same evidence" test. Instead, I think it more likely that the Supreme Court expected Grady to apply only when the conduct prosecuted at the first trial is or may constitute the entirety of an element of the offense at the second trial.
... .
Thus, I read Grady to bar a second prosecution whenever the defendant is at risk that the entirety of an element of an offense in a pending prosecution might be established by conduct constituting the entirety of a previously prosecuted offense (as in Grady), or the entirety of an element of such an offense, or the entirety of a distinct component of such an offense... ."
Id., at 723-725 (emphasis supplied; citations and footnotes omitted.)
In this case, the civil traffic infractions were not the exclusive evidence of DUI. The second reason Grady does not apply is that, contrary to the county judge's determination, the sanctions imposed here for civil traffic infractions are not essentially punitive and, therefore, need not be considered in a double jeopardy context. In that regard, we conclude that the county judge's reliance on Halper in regard to civil infractions under chapters 316 and 318 is misplaced.
An analysis of chapter 318 clearly shows the legislature's intent to decriminalize certain violations of chapter 316. In the decriminalization process, a person issued a citation may elect not to appear before any "official" and may instead pay a minimum, statutorily prescribed fine. A person electing to appear waives the right to the civil penalty statutorily prescribed and is subject then to an increased civil penalty. See § 318.14. We conclude that none of these civil penalties rise to the level of "punishment" defined by Halper. In Halper, the government had attempted to subject Mr. Halper to a $130,000 civil statutory penalty after criminally prosecuting him for the same acts. In determining under what circumstances a civil penalty could rise to the level of a second punishment for double jeopardy purposes, the court observed:
The Government, in our view, has misconstrued somewhat the nature of the multiple-punishment inquiry, and, in so doing, has overread the holdings of our precedents. Although, taken together, these cases establish that proceedings and penalties *1016 under the civil False Claims Act are indeed civil in nature, and that a civil remedy does not rise to the level of "punishment" merely because Congress provided for civil recovery in excess of the Government's actual damages, they do not foreclose the possibility that in a particular case a civil penalty authorized by the Act may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.

... .
Whether the statutory sanction was criminal in nature, the Court held, was a question of statutory interpretation; and, applying traditional canons of construction, the Court had little difficulty concluding that Congress intended that the statute impose a civil penalty and that the deficiency sanction was in fact remedial, providing reimbursement to the Government for investigatory and other costs of the taxpayer's fraud
... .
Mitchell at most is of tangential significance for our current inquiry. While the opinion makes clear that the Government may impose both a criminal and a civil sanction with respect to the same act or omission, and that whether a given sanction is criminal is a matter of statutory construction, it simply does not address the question we face today: whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes "punishment" for the purpose of double jeopardy analysis. If anything, Justice Brandeis' carefully crafted opinion for the Court intimates that a civil sanction may constitute punishment under some circumstances.

... .
The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice.
... .
We turn, finally, to the unresolved question implicit in our cases: whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause.
... .
From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. Mendoza-Martinez, 372 US [144] at 169, 9 L Ed 2d 644, 83 S Ct 554 [at 568] (whether sanction appears excessive in relation to its nonpunitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.

*1017 We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but smallgauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.
490 U.S. at 439-450, 109 S.Ct. at 1897-1903, 104 L.Ed.2d at 497-503 (emphasis supplied; citations and footnotes omitted.)
We, therefore, conclude that even if Dixon had not overruled Grady, Grady was not properly determinative of this case because (a) the evidence that constituted the civil traffic infractions of unlawful speed and failure to maintain a single lane was not the exclusive evidence or, for that matter, even necessary evidence upon which the state intended to rely to prove the DUI offense, and (b) the civil penalties imposed for the civil traffic infractions were not solely or so extraordinarily punitive in nature as to prohibit, in a double jeopardy basis, the subsequent prosecution for DUI. We observe that the Fifth District Court of Appeal has recently reached a similar conclusion. State v. Knowles, 625 So.2d 88 (Fla. 5th DCA 1993). We, accordingly, hold that the subsequent DUI prosecution was permissible.
SCHOONOVER and THREADGILL, JJ., concur.
NOTES
[1] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under Blockburger, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182.