**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARTIN MENDIVIL,

      Defendant-Appellant.

No. 05-2271
(D.C. No. CR-03-2112-13 MV)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McCONNELL**, and **GORSUCH**, Circuit Judges.

      Martin Mendivil was found guilty following a jury trial of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana. *See* 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). He was sentenced to 63 months' imprisonment. On appeal, Mr. Mendivil's counsel filed an *Anders* brief and moved to withdraw as counsel. *See Anders v. California*, 386 U.S. 738 (1967).

---

[*]After examining defense counsel's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered and submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

Mr. Mendivil did not file a response, and the government declined to file a brief. For the reasons set forth below, we conclude that there are no meritorious issues for appeal, and we therefore grant the motion to withdraw and dismiss the appeal.

\* \* \*

Viewing the evidence in the light most favorable to the government, as we are obliged to do, *United States v. Isaac-Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006), the evidence at trial established that Mr. Mendivil participated in a plot to transport mass quantities of marijuana (in total the government seized almost 5,000 kilograms) from the southwestern United States to the Chicago area for distribution. On May 18, 2003, Yolanda Alarcon, a truck driver and Federal Bureau of Investigation ("FBI") informant, alerted the FBI that she had been asked to drive, as part of the conspiracy, a commercial truck to be loaded with marijuana in Las Cruces, New Mexico. Edgar Lopez-Hernandez, another participant in the conspiracy, instructed Ms. Alarcon to move the truck from a Pilot Truck Stop to a radiator shop in Las Cruces. Mr. Lopez-Hernandez told her that although the truck already housed some marijuana, more was to be loaded at the radiator shop. Upon arriving there, Ms. Alarcon observed members of the conspiracy, and others, load the truck with several pallets containing boxes of marijuana. After the truck was loaded, Ms. Alarcon was told to move the truck to a TravelCenters of America ("TA") truck stop also in Las Cruces. After dropping off the truck at the TA truck stop, Mr. Lopez-Hernandez drove Ms. Alarcon to her

home in his personal vehicle. The FBI kept the truck under surveillance at the TA truck stop. Later that day, Mr. Mendivil appeared at the truck stop, took control of the truck, and proceeded to drive it northbound. The truck was stopped at a permanent U.S. Border Patrol checkpoint on Interstate 25 approximately 20 miles north of Las Cruces, New Mexico.

Prior to approaching Mr. Mendivil, the Border Patrol agent observed Mr. Mendivil exhibiting what the agent considered to be nervous behavior – shuffling with papers on the dash and compulsively smoking cigarettes. When asked by the Border Patrol agent what he was carrying, Mr. Mendivil responded that he was hauling "lavadoras," Spanish for washers. Upon inspection, the Border Patrol agent found, however, that the bill of lading indicated the truck was carrying a load of red chile, something rather different indeed; neither did the bill of lading indicate the shipper's name or address as required. Mr. Mendivil also gave conflicting responses to whether there was a lock on the cargo door. The Border Patrol agent then asked, and allegedly received, Mr. Mendivil's consent to search the cargo, including a canine search of the outside perimeter of the vehicle. The dog alerted and 1,417 kilograms of marijuana were subsequently found piled into Mr. Mendivil's truck.

At trial, the government presented other evidence in addition to the Border Patrol agent's testimony connecting Mr. Mendivil to the drug trafficking conspiracy. For example, on April 7, 2003, during an FBI search of a truck

driven by Ms. Alarcon, the FBI identified a blue medical card belonging to Mr. Mendivil and a log book that identified Mr. Mendivil as having driven two prior round trips from Las Cruces to Chicago during the pendency of the conspiracy. Mr. Jorge Torres-Laranega, a ringleader of the group, also apparently paid certain of Mr. Mendivil's attorney fees.

On August 6, 2003, Mr. Mendivil was indicted for violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) – possession with intent to distribute 1,000 kilograms or more of marijuana. In response to Mr. Mendivil's subsequent motion to suppress the evidence resulting from the checkpoint stop and search, the government filed a motion to dismiss with prejudice the August 6, 2003 indictment because it determined that it was not in the interests of the government to proceed with the suppression hearing at that time; doing so, it explained, risked compromising its then still-ongoing conspiracy investigation. The district court granted the government's motion on October 23, 2003.

On February 19, 2004, a grand jury returned a superseding indictment in which Mr. Mendivil was charged for the first time with conspiracy to possess with intent to distribute marijuana, a violation of 21 U.S.C. §846. Mr. Mendivil again pursued a motion to suppress. The conspiracy investigation no longer an issue by this time, the government opposed the motion. The district court, after a hearing on the matter, denied the motion to suppress and set the matter for trial. After a five week jury trial, Mr. Mendivil was convicted and subsequently

sentenced.

∗   ∗   ∗

Counsel may "request permission to withdraw [from an appeal] where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005) (citing *Anders*, 386 U.S. at 744). This process requires counsel to

> submit a brief to the client and the appellate court indicating any potential appealable issues based on the record. The client may then choose to submit arguments to the court. The [c]ourt must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous. If the court concludes after such an examination that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal.

*Id.* (citing *Anders*, 386 U.S. at 744).

In his *Anders* brief, counsel notes that Mr. Mendivil urged him to appeal on the bases that (1) the District Court erred in its denial of Mr. Mendivil's motion to suppress the evidence seized in the checkpoint stop, (2) the District Court erred in its denial of Mr. Mendivil's motion to dismiss the indictment on double jeopardy grounds, and (3) there was insufficient evidence to support the jury verdict that Mr. Mendivil participated in a conspiracy. Our review confirms counsel's conclusion that no basis in law or fact exists for any of these arguments.

In assessing a district court's denial of a motion to suppress, this Court views the evidence in the light most favorable to the government and accepts the district court's factual findings unless they are clearly erroneous. *United States v.*

*Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). Mr. Mendivil argues that the detention and search of his truck was not voluntary and thus the fruits of the search should have been suppressed. At a permanent U.S. Border Patrol checkpoint, however, a border patrol agent is permitted to question motorists briefly on topics "reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband." *United States v. Rascon-Ortiz*, 994 F.2d 749, 752 (10th Cir. 1993). The agent may further detain a motorist if the agent has reasonable suspicion or probable cause, if the motorist consents, or if the agent observes "suspicious circumstances." *Id.* at 753. "[B]order patrol agents are given deference in relying upon their law enforcement training and past experience in deciding whether a suspicious circumstance exists." *Id.*

Mr. Mendivil's own testimony at the suppression hearing made clear that the Border Patrol agent's initial questions were permissible and routine – the agent asked about Mr. Mendivil's legal status in this country, where he was going, and the nature of the cargo in his truck. During the checkpoint stop, the Border Patrol agent observed Mr. Mendivil exhibiting nervous behavior and noted a variety of other suspicious circumstances: the bill of lading's indication that the truck was carrying chile although Mr. Mendivil stated he was carrying washers, the bill of lading's failure to provide the identity of the shipper, and Mr. Mendivil's conflicting responses regarding whether there was a lock on the cargo

door.  These circumstances sufficed to justify the Border Patrol agent's brief detention of the Defendant to investigate his suspicions.  *See Rascon-Ortiz*, 994 F.2d at 753 (holding that nervousness alone constitutes a suspicious circumstance). Within five minutes, moreover, a dog was brought to sniff the outside of Mr. Mendivil's truck.  Though consent is not required for such a procedure during an otherwise routine and lawful detention at a fixed checkpoint, *United States v. Chavira*, 9 F.3d 888, 890 n.1 (10th Cir. 1993), there is evidence before us indicating that Mr. Mendivil did give consent.  In any event, the dog promptly alerted, the agent thereafter had probable cause to conduct the search, and thus Mr. Mendivil's motion to suppress is without merit.  *Id.* at 890.

In assessing the denial of a motion to dismiss an indictment on legal grounds, we review the district court's decision de novo.  *United States v. Ambort*, 405 F.3d 1109, 1116 (10th Cir. 2005).  Mr. Mendivil argues that his motion to dismiss the February 19, 2004 indictment should have been granted on double jeopardy grounds because his prior August 6, 2003 indictment for possession with intent to distribute was dismissed with prejudice.  But the Supreme Court has definitively held otherwise, indicating that conspiracy to commit an offense and the offense itself "are separate offenses for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 390-91 (1992); *see also Harvey v. Shillinger*, 76 F.3d 1528, 1533 (10th Cir. 1996).

With respect to Mr. Mendivil's sufficiency of evidence argument, in a drug

trafficking conspiracy, the government must establish that the defendant (1) agreed with two or more persons to import and possess with intent to distribute 1,000 kilograms or more of marijuana, (2) knew at least the essential objectives of the conspiracy, (3) knowingly and voluntarily became part of the conspiracy, and (4) was interdependent on other co-conspirators. *See United States v. Arras*, 373 F.3d 1071, 1074 (10th Cir. 2004). Having reviewed the entire record in this case, pertinent facts of which are recited above, and viewing those facts in the light most favorable to the government as we must, we cannot help but conclude that ample evidence exists to support Mr. Mendivil's conviction.

∗　∗　∗

For the foregoing reasons, we DISMISS the appeal and GRANT counsel's motion to withdraw.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge