William V. **GONGORA**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 01–94–00070–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 4, 1996.

regarding the alleged violation of due process, and we decline to address this issue.

Gilbert Villareal, Houston, for appellant.

John B. Holmes, District Attorney, Alan Curry, Assistant District Attorney, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and ANDELL and HEDGES, JJ.

## OPINION

HEDGES, Justice.

After the trial court denied his special plea in bar, appellant, William V. Gongora, pled guilty to the offense of possession with intent to deliver a controlled substance. The trial court assessed punishment at 45–years confinement and a fine of $1,000. In 31 points of error, appellant asserts that the trial court erred in denying his special plea in bar and that the double jeopardy clauses of the federal and state constitutions, as well as the doctrines of res judicata and collateral estoppel, precluded his trial for this offense. In three additional points of error, he asserts that his guilty plea was involuntary because

the trial court failed to properly admonish him about the consequences of his plea. We reverse and remand.

## Background

### I. The arrest

Appellant was arrested on January 28, 1993. Houston police officers James Verastigui and Johnny Ybarbo, working undercover, had negotiated with Herbert Romero and Ricardo Atiani for the purchase of five kilograms of cocaine. The price of the cocaine was $87,500. Verastigui and Ybarbo met Romero and Atiani at a shopping center, and Romero led the officers to a nearby apartment where appellant and a man named Victor Cuero were waiting. When Ybarbo asked to see the cocaine, appellant left the apartment, went to the parking lot, and took a package from the back seat of a red car. (The red car belonged to appellant's wife.) He returned to the apartment with a brick of cocaine (the first brick) wrapped in a shirt. At appellant's invitation, Ybarbo cut into the brick with a kitchen knife and saw what he believed to be cocaine. He gave a pre-arranged bust signal. An arrest team entered the apartment and arrested appellant and the others. Officers asked appellant to sign a consent to search form so that they could search the red car. Appellant refused. The officers arranged to have the car towed and conducted an inventory search. In the back seat, in a laundry basket full of clothes, they found another brick of cocaine (the second brick), wrapped in a shirt.

### II. The indictments

The grand jury returned two indictments against appellant. The first indictment, in cause number 655716, charged appellant with the offense of delivery of a controlled substance. It provided in pertinent part

that in Harris County Texas, *William V. Gongora*, hereafter styled the Defendant, on or about *January 28, 1993*, did then and there unlawfully, intentionally and knowingly deliver by actual transfer to J. YBARBO, a controlled substance, namely, COCAINE, weighing by aggregate weight, including any adulterants and dilutants, at least 400 grams.

It is further presented that in Harris County, Texas, WILLIAM V. GONGORA, hereafter styled the Defendant, heretofore on or about JANUARY 28, 1993, did then and there unlawfully, intentionally and knowingly deliver by constructive transfer to J. YBARBO, a controlled substance, namely, COCAINE, weighing by aggregate weight, including any adulterants and dilutants, at least 400 grams.

It is further presented that in Harris County, Texas, WILLIAM V. GONGORA, hereafter styled the Defendant, heretofore on or about *January 28, 1993*, did then and there unlawfully, intentionally and knowingly deliver by offering to sell to J. YBARBO, a controlled substance, namely, COCAINE, weighing by aggregate weight, including any adulterants and dilutants, at least 400 grams.

It is further presented that at the time the Defendant committed the felony offense of DELIVERY of [a] CONTROLLED SUBSTANCE on or about January 28, 1993, as hereinabove alleged, he used and exhibited a deadly weapon, namely, a firearm during the commission of and during the immediate flight therefrom.

The second indictment, in cause number 655717, related to the second brick of cocaine and charged appellant with possession with intent to deliver a controlled substance. It provided that on or about January 28, 1993, appellant:

did then and there unlawfully, intentionally and knowingly possess with intent to deliver a controlled substance, namely, COCAINE, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants.

It is further presented that at the time the Defendant committed the felony offense of POSSESSION of [a] CONTROLLED SUBSTANCE on or about January 28, 1993, as hereinabove alleged, he used and exhibited a deadly weapon, namely, a firearm, during the commission of and during the immediate flight therefrom.

## III. The trial

In October 1993, appellant was tried and found guilty of the offense of delivery of a controlled substance in cause number 665716. During the guilt-innocence phase of the trial, Officers Verastigui and Ybarbo testified about the brick of cocaine appellant brought into the apartment. It was clear from the officers' testimony that the undercover officers were negotiating to buy five kilograms of cocaine for $87,500. Officers Tory Tyrrell and Nicholas Wilson, members of the arrest team, testified about events following the arrest, including the discovery of the second brick of cocaine in the back seat of the red car. The State introduced both bricks of cocaine into evidence as exhibits 10 (the first brick) and 13 (the second brick). Officer Wilson testified about the street value of cocaine:

Q. So if you were to purchase two kilograms such as these two you recovered in this case, what would be the street value?

A. Two hundred thousand dollars.

Derrick Sanders, a Houston Police Department chemist, testified regarding both exhibits. He stated that the substance in both exhibits was cocaine. He further testified that exhibit 10 contained 766.6 grams of pure cocaine (or 77.3 percent pure cocaine), and that exhibit 13 contained 762.9 grams (or 78.4 percent) pure cocaine. The prosecutor then asked the following questions:

Q. Do these two figures of 766.6 and 762.9 grams, is that over four hundred grams?

A. Yes, it is.

Q. Would that be over four hundred grams of cocaine including any adulterants and dilutants?

A. That is correct.

In her closing argument, the prosecutor stated:

The testimony you heard was that in the apartment this defendant was the one who brought the cocaine. No one else. This defendant went out to his car and got the one kilo, and then this defendant had another kilo in his car. That is what the evidence is, and it is clear that this was a delivery of over four hundred grams to

Officer Johnny Ybarbo and Officer J.J. Verastigui.

In the punishment phase of the trial, Officer Wilson again testified, and the prosecutor asked the following questions:

Q. Earlier in this trial, I believe you testified about the street value of two kilograms of cocaine, is that correct?

A. Yes, ma'am, it is.

. . . .

Q. The cocaine that was recovered in this case was powdered cocaine; is that correct?

A. Yes, ma'am, it is.

Q. Let's talk about one gram of powdered cocaine. . . . How many rocks of crack cocaine will one gram of powder cocaine make?

. . . .

A. The average size rock of crack cocaine is two-tenths of a gram.

. . . .

Q. So if you had one gram of crack cocaine, that would make five rocks; is that correct?

A. That is correct.

Q. One kilogram is one-thousand grams; is that correct?

A. Yes, ma'am, it is.

Q. How many . . . rocks of crack cocaine can you make with one kilogram of powdered cocaine.

A. You could make five thousand rocks of crack cocaine from one kilogram of powdered cocaine.

Q. Now, we had a second kilogram in this case, so that would be an additional one thousand grams; is that correct?

A. Yes, ma'am, it is.

Q. So being two kilograms recovered in this case, would that be a total of how many rocks of crack cocaine could be made [sic] out of those two kilos?

A. You can make ten thousand rocks of crack cocaine.

. . . .

Q. Of these two kilograms that were recovered in this case, if you converted that into ten thousand rocks of crack cocaine,

what would the street value of those ten thousand rocks be?

A. Approximately two hundred fifty thousand dollars.

In her closing argument during the punishment phase, the prosecutor stated:

> You have every reason in the world why this defendant should be sentenced to life, and I am going to tell you why right now. The legislature has said that a minimum of four hundred grams means fifteen years in prison, a maximum for the same offense is life. You have four times the minimum amount that the legislature set out to be fifteen years, so we are starting out at sixty years right now.

The jury found appellant guilty of delivery of a controlled substance and assessed punishment at 60–years confinement and an $87,500 fine.

## IV. Appellant's special plea and plea of guilty

In January 1994, before his trial in cause number 655717 for the offense of possession with intent to deliver, appellant filed an amended special plea in bar pursuant to TEX. CODE CRIM.PROC.ANN. art. 27.05 (Vernon 1989). In his special plea, he asserted that his prosecution in cause number 655717 constituted a second prosecution for the same offense as that for which he had been convicted in cause number 655716. In his amended plea, appellant asserted that, among other things,

> in Cause Number 655716 this Court submitted a General verdict [sic] to the Jury during the Guilt/Innocence phase of the Trial, that did not specifically request that they distinguish which kilo they were finding the Defendant guilty of delivering, by actual transfer, constructive transfer and/or offer to sell.

At the hearing on appellant's amended plea, appellant's trial counsel stated:

> The basic gist of our allegation is that this is—my client has been prosecuted for the kilo of cocaine that was found in the car. All that evidence came in case No. 655716, and it basically arose out of the same criminal episode.

The Court: Does the State want to be heard?

Ms. Davidson: Just briefly, Judge. Yes, Mr. Villareal is correct. That evidence did come out at trial. The State's position is that it's a different offense, and he can be prosecuted for it as well as he was convicted of the delivery offense and we will ask that you deny the motion.

The trial court denied appellant's plea in bar. Appellant entered his guilty plea. The trial court found him guilty and assessed punishment of 45–years confinement (to run concurrently with the 60–year sentence imposed in cause number 655716) and a $1,000 fine.

## Premature appeal

The State asserts that appellant's conviction in cause number 655716 is not final and that appellant's plea of double jeopardy is therefore premature. When appellant filed his appeal, his appeal of his conviction in cause number 655716 was pending before this Court. A conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed and the mandate of affirmance becomes final. *Garcia v. State,* 768 S.W.2d 726, 730 (Tex.Crim.App.1987.) Only a final judgment will support a plea of double jeopardy or collateral estoppel. *Id.* at 729. This Court has affirmed appellant's conviction in cause number 655716. *See Gongora v. State,* No. 01–93–00974–CR, 1995 WL 569679 (Tex. App.—Houston [1st Dist.], September 28, 1995, no pet.) (not designated for publication). Appellant has not filed a motion for rehearing or a petition for discretionary review. Mandate has issued. The judgment in cause number 655716 is therefore final, and we may consider appellant's double jeopardy, collateral estoppel, and res judicata claims.

## Article 27.05

In his first two points of error, appellant asserts the trial court erred in denying his special plea in bar filed pursuant to article 27.05 of the Code of Criminal Procedure. Specifically, he asserts that section 481.132 of the Texas Controlled Substances Act, read in

conjunction with article 27.05, precludes his prosecution for possession in cause number 655717.

Article 27.05 provides in part:

A defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode that was or should have been consolidated into one trial, and that the former prosecution:

. . . .

(2) resulted in conviction. . . .

TEX.CODE CRIM.PROC.ANN. art. 27.05 (Vernon 1989).

Section 481.132, which addresses multiple prosecutions under the Texas Controlled Substances Act, provides in part:

(a) In this section, "criminal episode" means the commission of two or more offenses under this chapter under the following circumstances:

(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme, plan, or continuing course of conduct; or

(2) the offenses are the repeated commission of the same or similar offenses.

(b) *A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.* If a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, not later than the 30th day before the date of the trial, the state shall file written notice of the action.

. . . .

(f) This section provides the exclusive method for consolidation of joinder of prosecutions for offenses under this chapter. . . .

TEX. HEALTH & SAFETY CODE ANN. § 481.132 (Vernon 1992) (emphasis added).

Appellant asserts that section 481.132 "specifically bars the State from multiple prosecutions." We disagree. Section 481.132 is, by its terms, permissive. It neither requires the consolidation of offenses

committed in the same criminal episode, nor precludes multiple prosecutions.

Chapter three of the Texas Penal Code deals with multiple prosecutions. The language of TEX. PENAL CODE ANN. § 3.02 (Vernon 1994) is the equivalent of portions of TEX. HEALTH & SAFETY CODE ANN. § 481.132. Like section 481.132(b), section 3.02(a) provides, in part, "A defendant *may* be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." (Emphasis added.) The Court of Criminal Appeals has noted that section 3.02(a) is permissive, and that a defendant does not have a right to consolidate offenses committed in the same criminal episode. *Nelson v. State,* 864 S.W.2d 496, 498 (Tex.Crim.App.1993); *see also State v. Houth,* 845 S.W.2d 853, 866 (Tex.Crim.App. 1992) (Benavides, J., concurring) (although section 3.02(a) permits prosecution in a single criminal action for all offenses arising out of the same criminal episode, it does not absolutely require such consolidation or entitle an accused to insist that all offenses arising from a single "criminal episode" be adjudicated in one proceeding). We see no reason why section 481.132 should be interpreted differently.

We overrule points of error one and two.

■ The State has asserted that appellant has not sustained his burden of establishing a double jeopardy violation because he failed to show that he did not agree that the offenses be tried separately. A defendant who could have been tried in one proceeding for various offenses but chooses separate trials cannot complain of a double jeopardy violation. *Jeffers v. United States,* 432 U.S. 137, 153, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977); *Garcia v. State,* 806 S.W.2d 835, 837 n. 4 (Tex. Crim.App.1990); *Guzman v. State,* 732 S.W.2d 683, 686 (Tex.App.—Corpus Christi 1987, no pet.).

The State relies on *Guzman,* and asserts that it is absolutely necessary for appellant to show that he did not consent to separate trials. In *Guzman,* the defendant was charged in one indictment with 20 counts of burglary; each count involved a burglary of a different habitation. The defendant was convicted of burglarizing 18 habitations. His

first conviction was the result of a jury trial. The other 17 convictions resulted from combined pleas to the trial court. 732 S.W.2d at 684–85. The defendant raised his double jeopardy assertion for the first time on appeal. *Id.* at 685. The State asserted that it had an agreement with the defendant that he would be tried separately on each count of the indictment. The court noted that the State's assertion was not supported by the record. However, the court further noted that because the defendant failed "to object, to develop the [double jeopardy] issue in the trial court, or to introduce evidence in support of his contention," the defendant "deprived this Court of facts sufficient to grant appellant his requested relief." *Id.*

The State's reliance on *Guzman* is misplaced. In *Guzman,* there was nothing in the record of the guilty plea convictions that raised the double jeopardy issue. *Id.* Here, the trial court heard appellant's amended special plea in bar, denied it, took appellant's plea of guilty, and sentenced him. Additionally, nothing in the record even suggests that the State attempted to consolidate these offenses and that appellant objected to consolidation. Appellant has provided a record sufficient to allow this Court to consider his double jeopardy claim.

### Double jeopardy

In point of error three, appellant asserts the trial court erred in overruling his special plea because he met his burden of proof under article 27.05. In points of error four, five, 10 through 17, 20, 21, and 25 through 29, appellant asserts that, for a variety of reasons, his prosecution in cause number 655717 was barred by the prohibition against double jeopardy contained in the fifth amendment of the United States Constitution [1] and article I, section 14, of the Texas Constitution.[2]

■ Conceptually, the federal and state constitutional provisions are identical. *Phillips v. State,* 787 S.W.2d 391, 393 n. 2 (Tex. Crim.App.1990). The double jeopardy clause of the fifth amendment protects against: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Id.* at 393. It is a defendant's burden to present facts necessary to demonstrate a double jeopardy violation. *Guzman,* 732 S.W.2d at 686.

■ Appellant asserts, among other things, that he has already been tried and punished for the two bricks of cocaine that were introduced into evidence at his trial. The State argues that appellant was prosecuted for the offense of delivery, and that double jeopardy does not prohibit his prosecution for a "completely different offense— possession of an entirely different amount of cocaine." The State argues that it makes no difference, for purposes of the double jeopardy analysis, that the State introduced evidence in the trial of cause number 655,716 that would support appellant's conviction in cause number 655,717, because the "introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." The State relies on *United States v. Felix,* 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). The case before us, however, differs significantly from *Felix.*

*Felix* manufactured methamphetamine in an Oklahoma facility. The DEA raided and shut down the facility but Felix evaded arrest. He then ordered chemicals and equipment for the manufacture of methamphetamine to be delivered to him in Missouri. DEA agents observed the delivery and arrested him. Based on the delivery of the equipment, Felix was charged with the offense of attempting to manufacture an illegal drug. At his trial, in order to establish his criminal intent, the government introduced evidence that he had manufactured methamphetamine in Oklahoma. The jury was instructed that the evidence of the Oklahoma transactions was admissible only to show Felix's state of mind with respect to the chemicals and equipment he attempted to purchase in Missouri. The jury found Felix guilty. *Id.* at 380–81, 112 S.Ct. at 1379–80.

Felix was then charged in Oklahoma with conspiracy to manufacture, possess, and dis-

---

**1.** U.S. CONST. amend. V.

**2.** TEX. CONST. art. I, § 14.

tribute methamphetamine. At his trial, the government introduced much of the same evidence of the Missouri and Oklahoma transactions that had been introduced in the Missouri trial. *Id.* at 381–82, 112 S.Ct. at 1380–81.

The Supreme Court held that "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause." *Id.* at 380–81, 112 S.Ct. at 1380. The Court noted that the mere overlap in proof between two prosecutions does not establish a double jeopardy violation. *Id.* at 385, 112 S.Ct. at 1382. The Court recognized the "basic, yet important" principle that "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* at 387, 112 S.Ct. at 1383. The Court went on to state:

> That principle is clearly applicable here. At the Missouri trial, the Government did not in any way *prosecute* Felix for the Oklahoma methamphetamine transactions; it simply introduced those transactions as prior acts evidence under [FED.R.EVID.] 404(b). The Government was therefore free to prosecute Felix in the trial below for the substantive drug crimes detailed [in the Oklahoma indictment].

*Id.*

We conclude, however, that in the case before us, appellant was prosecuted and punished for the second brick of cocaine in the trial of cause number 655,716 because the State presented both bricks as part of the offense of delivery for which appellant was being tried. The jury charge specified that appellant was charged with delivery of cocaine weighing at least 400 grams. The charge provided: " 'Delivery' means the actual or constructive transfer from one person to another of a controlled substance.... It also includes an offer to sell a controlled substance." Throughout the trial, the prosecutor drew no distinction between the first and second bricks of cocaine but presented both as part of the delivery in a drug deal that was supposed to be for five kilograms of cocaine.

In addition to presenting considerable evidence regarding the second brick of cocaine at trial, the prosecutor referred to *both* bricks in her closing arguments as part of same the delivery and asked the jury to consider *both* bricks of cocaine in assessing punishment. In her closing argument during the guilt-innocence phase of the trial, the prosecutor stated: "This defendant went out to his car and got the one kilo, and *then this defendant had another kilo in his car.* That is what the evidence is, and *it is clear that this was a delivery of over four hundred grams....*" (Emphasis added.) In her closing argument during the punishment phase, she stated: "The legislature has said that a minimum of four hundred grams means fifteen years in prison, a maximum for the same offense is life. *You have four times the minimum amount that the legislature set out to be fifteen years, so we are starting out at sixty years right now.*" (Emphasis added.) The total amount of cocaine in the two bricks was 1529.5 grams—almost 1600 grams, or four times 400 grams. The prosecutor was clearly referring to both bricks of cocaine when she argued that, based on the evidence, "we are starting out at sixty years," or 15 years for each 400 grams.

We sustain points of error four and five. Because of our disposition of these points, we need not address appellant's remaining points of error.

We reverse the judgment, and remand this case to the trial court with instructions that the indictment in this cause be dismissed.