Francisco Javier PEÑA–
MOTA, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–216–CR

Court of Appeals of Texas,
Waco.

Feb. 3, 1999.

Shelly Fowler, Cleburne, for appellant.

Dale S. Hanna, Dist. Atty., Cleburne, for appellee.

Before Chief Justice DAVIS Justice CUMMINGS and Justice VANCE.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Appellant Francisco Javier Peña–Mota of two counts of delivery of 400 grams or more of cocaine and one count of possession of that quantity of cocaine with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(f) (Vernon Supp.1999). The jury assessed his punishment on each count at life imprisonment and a $250,000 fine. Peña–Mota brings this appeal claiming in two points of error he received ineffective assistance of counsel at trial.

### FACTUAL BACKGROUND

During January and February 1997, undercover narcotics investigator Adam King purchased cocaine from Peña–Mota on three occasions. The three purchases combined amounted to 317.2 grams of cocaine. King again contacted Peña–Mota early in the afternoon of February 28, 1997 in an attempt to arrange the purchase of a kilogram of cocaine and two pounds of marihuana. After Peña–Mota told King it would be difficult to

obtain that quantity of cocaine, King agreed to purchase half that amount. Peña–Mota told King he would have to obtain the cocaine from two different sources to fill the order.

Peña–Mota called King later that afternoon and instructed King to meet him at a grocery store parking lot in Burleson. King and another undercover officer arrived at the grocery store at approximately 5:00 that evening. Three hours later, Peña–Mota called King on a cellular phone and informed him he was en route with the requested narcotics. Two pickups and a car subsequently arrived and parked behind King's vehicle.

Peña–Mota emerged from the car and walked to the passenger side of one of the accompanying pickups where he obtained a quarter of a kilogram of cocaine from a passenger identified as Rafael Salaices. Peña–Mota and Salaices then approached King's vehicle. Peña–Mota instructed Salaices to stand at the front of King's vehicle. He then opened the passenger door of King's vehicle and "threw" two bags of cocaine on the seat beside the officer accompanying King, who in turn handed them to King. Peña–Mota got into King's vehicle and asked him to divide the $13,000 payment into two equal stacks in addition to requesting a $250 commission and a small quantity of cocaine for his own use.

King gave Peña–Mota some cocaine and began counting the money, which was the prearranged signal for other officers to converge on the scene. As these officers approached, King and his fellow undercover officer drew handguns and told Peña–Mota he was under arrest. Peña–Mota bolted from the vehicle and attempted to flee. He was promptly apprehended by other officers at the scene. Upon being apprehended, Peña–Mota informed King and his fellow undercover officer they were being photographed and would be killed.

## ALLEGATIONS OF INEFFECTIVE ASSISTANCE

Peña–Mota's first point alleges he did not receive a fair trial due to ineffective assistance of counsel. His second point asserts ineffective assistance of counsel during the punishment phase. Both points raise the same instances of conduct on counsel's part as demonstrating ineffective assistance. Peña–Mota alleges counsel rendered deficient assistance by:

- failing to attempt to rehabilitate one venire member whom the State successfully challenged for cause because she stated she would be afraid to serve because of possible retaliation in the event of a conviction;
- failing to attempt to rehabilitate two venire panelists whom the State successfully challenged for cause because they "indicated some hesitation when questioned regarding their ability to assess punishment";
- questioning the venire on community supervision even though Peña–Mota would not be eligible if convicted of delivering the quantity of cocaine alleged;
- objecting to the State's proposed charge prior to opening statements, demonstrating his lack of knowledge of criminal procedure;
- failing to object to the State's opening statement that a gun had been found in Salaices' and Cadeña's vehicle;
- admitting in his opening statement that Peña–Mota was an illegal alien, thus admitting an extraneous offense;
- informing the jury in his opening statement and in closing arguments in both phases that he had admonished Peña–Mota at length not to testify;
- failing to object to King's identification of Peña–Mota as the person with whom he spoke on the telephone "as you cannot identify someone from a phone conversation";
- failing to object to testimony and physical evidence admitted which related to the discovery of a gun, the odor of cocaine, and narcotic paraphernalia in Salaices' and Cadeña's pickup;
- failing to object to testimony and physical evidence admitted which related to the recovery of cocaine from Cadeña's person;
- bolstering King by asking open-ended questions about his education and background;

- discussing with King "the harm and dangers of drugs, the Mexican connection, and the different categories and weights of drugs in the legal system";

- questioning King about a conspiracy allegation which had been severed from the indictment;

- stating in closing argument that the video depicting the commission of the offense was "tough" to defend against; and

- admitting in closing argument that Peña–Mota is guilty (which Peña–Mota himself admitted on the stand);

- indirectly telling the jury there was reason to fear Peña–Mota when counsel sternly admonished King during cross-examination not to call drug dealers from his home phone for the safety of his family;

- being confused about the applicable range of punishment as evidenced by counsel's questioning of Peña–Mota; and

- essentially inviting the jurors in argument to assess whatever fine they might because it would "never be paid anyway."

## STANDARD OF REVIEW

In assessing the effectiveness of counsel during the guilt-innocence phase of trial, we apply the test set forth by the Supreme Court in *Strickland v. Washington.* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Jarrett,* 891 S.W.2d 935, 938 (Tex.Crim.App.1994). *Strickland* requires us to determine whether:

(1) counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

"Consideration of the 'totality of the representation,' rather than isolated acts or omissions of trial counsel, determines whether this standard has been met." *Ex parte Kunkle,* 852 S.W.2d 499, 505 (Tex.Crim.App.1993) (quoting *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim.App.1983)); *accord Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Crim.App. [Panel Op.] 1982). We strongly presume that counsel's conduct lies within the "wide range of reasonable representation." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). The accused must overcome this presumption by affirmatively showing that his representation fails the two-part test set forth in *Strickland. Id.*

When assessing the effectiveness of counsel during the punishment phase however, we apply the reasonably effective assistance test set forth in *Ex parte Duffy.* 607 S.W.2d 507, 516 (Tex.Crim.App.1980).[1] That is, we determine "whether counsel was reasonably likely to render effective assistance and whether counsel reasonably rendered effective assistance." *Ex parte Langley,* 833 S.W.2d 141, 143 (Tex.Crim.App.1992). Generally we examine the totality of the representation in gauging the effectiveness of counsel. *Raborn,* 658 S.W.2d at 605. In some situations however, a single omission on counsel's part can be considered ineffective assistance. *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim. App.1991).

## WAIVER BY CONFESSION

■ The State first argues that under the *DeGarmo* doctrine Peña–Mota has waived the right to challenge counsel's effectiveness during the guilt-innocence phase because he

---

1. In the last eighteen months, the Court of Criminal Appeals has granted petitions for discretionary review in three cases to determine whether *Duffy* is the correct standard for assessing ineffective assistance claims arising from the punishment phase of trial. *See Raney v. State,* No. 244–98 (Tex.Crim.App. June 24, 1998); *Hernandez v. State,* No. 506–97 (Tex.Crim.App. Sept. 17, 1997); *Oliva v. State,* No. 651–97 (Tex.Crim.App. Aug.27, 1997). However, the Court has dismissed two of these petitions as improvidently granted. *See Raney v. State,* 982 S.W.2d 429 (Tex.Crim.App.1998); *Oliva v. State,* No. 651–97, 1998 WL 754867, —— S.W.2d —— (Tex.Crim. App. Oct.28, 1998). The precise issue in *Hernandez* is "Whether the court of appeals correctly applied the *Duffy* standard instead of the *Strickland* standard for determining ineffective assistance of counsel, to error that could have an indirect, ancillary impact on the punishment phase of trial."

admitted his guilt during his testimony in both phases of trial. Since this case was submitted however, the Court of Criminal Appeals has overruled *DeGarmo. Leday v. State,* 983 S.W.2d 713, 725–26 (Tex.Crim.App. 1998). Accordingly, we reject the State's waiver argument.

## THE GUILT–INNOCENCE PHASE

We examine first counsel's conduct during the guilt-innocence phase. Peña–Mota identifies at least ten instances of conduct which he claims demonstrate counsel's ineffectiveness during guilt-innocence. We discuss them in the order they occurred, bearing in mind that we must examine the "'totality of the representation,' rather than isolated acts or omissions of trial counsel," when we assess counsel's effectiveness. *Kunkle,* 852 S.W.2d at 505; *accord Ferguson,* 639 S.W.2d at 310.

■ Peña–Mota claims his trial counsel rendered ineffective assistance by failing to attempt to rehabilitate a venire panelist whom the State successfully challenged for cause after she stated she would be afraid to serve because of possible retaliation in the event of a conviction. However, "[w]e will not second-guess counsel's apparent decision that the venireman's views were probably so firmly held that an attempt at rehabilitation would not be worth the candle." *McFarland,* 928 S.W.2d at 504.

■ He asserts that counsel demonstrated his lack of knowledge of criminal procedure by objecting to the State's proposed charge before opening statements. This was counsel's first jury trial. The district attorney apparently customarily prepares a proposed jury charge prior to trial and serves a copy on defense counsel. Outside the presence of the jury and before opening statements, counsel objected to the State's proposed charge. The nature of his objection is not clear from the record. Even assuming counsel's conduct in this instance was deficient, no harm is shown because the objection was made outside the jury's presence and because counsel timely reasserted his objection at the conclusion of the evidence and prior to the court's reading of the charge to the jury.

■ In addition, Peña–Mota argues that counsel rendered deficient assistance during guilt-innocence by:

- failing to object to the State's opening statement that a gun had been found in Salaices' and Cadeña's vehicle;
- admitting in his opening statement that Peña–Mota was an illegal alien, thus admitting an extraneous offense;
- informing the jury in his opening statement and in closing argument that he had admonished Peña–Mota at length not to testify;
- failing to object to King's identification of Peña–Mota as the person with whom he spoke on the telephone "as you cannot identify someone from a phone conversation";
- failing to object to testimony and physical evidence admitted which related to the discovery of a gun, the odor of cocaine, and narcotic paraphernalia in Salaices' and Cadeña's pickup;
- failing to object to testimony and physical evidence admitted which related to the recovery of cocaine from Cadeña's person;
- bolstering King by asking open-ended questions about his education and background;
- discussing with King "the harm and dangers of drugs, the Mexican connection, and the different categories and weights of drugs in the legal system";
- questioning King about a conspiracy allegation which had been severed from the indictment;
- stating in closing argument that the video depicting the commission of the offense was "tough" to defend against; and
- admitting in closing argument that Peña–Mota is guilty (which Peña–Mota himself admitted on the stand).

The State responds that counsel's conduct in each instance evinces a plausible strategy on counsel's part to: (1) be open and honest with the jury in an effort to mitigate punishment in light of the overwhelming evidence of Peña–Mota's guilt; (2) not call unnecessary attention to the extraneous matters of-

fered by the State; (3) attempt to persuade the jury that he "was just a low-level 'mole' being controlled and manipulated by a dangerous criminal syndicate known as the "Mexican Connection"; and (4) attempt to gain jury sympathy "by establishing that Appellant was an illegal alien from the poorest of conditions, who became addicted to alcohol and drugs when trying to cope with the depression brought on by having his family deported, who then turned to selling drugs to support both his family in Mexico . . . and his extensive drug habit."

■ To successfully assert an ineffective assistance claim, an appellant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). An appellant generally accomplishes this by developing a record in a hearing on a motion for new trial or an application for a writ of habeas corpus which focuses on counsel's conduct. *Id.* at 772 & n. 3 (Baird, J., concurring).

We do not have such a record in this case. Without testimony by trial counsel, we cannot meaningfully address Peña–Mota's allegations. *See McWhorter v. State*, 957 S.W.2d 928, 931 (Tex.App.—Beaumont 1997, no pet.); *Davis v. State*, 930 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Accordingly, Peña–Mota has not rebutted the presumption that counsel was acting pursuant to a sound trial strategy in the instances identified.

■ Generally, we restrict ourselves to the alleged instances of deficient representation in assessing counsel's conduct because the "burden of proving ineffective assistance of

counsel falls on the accused." *Kunkle*, 852 S.W.2d at 505. However, we must examine the " 'totality of the representation,' rather than isolated acts or omissions of trial counsel," to assess counsel's effectiveness. *Id.*[2] This requires us to review counsel's conduct during pretrial, guilt-innocence, and punishment.[3] *Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

■ In reviewing the record in Peña–Mota's case, we observe that he was convicted of three separate offenses—actual delivery of cocaine, constructive delivery of cocaine, and possession with intent to deliver cocaine—which all arise from his delivery of the same 481.21 grams of cocaine ultimately to Officer King in the grocery store parking lot on February 28, 1997.

■ Section 481.132(b) of the Health and Safety Code permits the State to join in a single indictment two or more narcotics offenses committed during the same criminal episode. *Watson v. State*, 900 S.W.2d 60, 62–63 (Tex.Crim.App.1995); TEX. HEALTH & SAFETY CODE ANN. § 481.132(b) (Vernon 1992). In addition to alleging separate offenses arising from a single criminal episode, a single indictment may also properly allege a primary offense together with one or more offenses which are lesser-included offenses of the primary offense. *See Washington v. State*, 771 S.W.2d 537, 546 (Tex.Crim.App. 1989); *Shavers v. State*, 881 S.W.2d 67, 73 (Tex.App.—Dallas 1994, no pet.).

■ Possession with intent to deliver a controlled substance is a lesser-included offense of delivery of that same controlled substance in the same transaction. *See Mello v. State*, 806 S.W.2d 875, 878 (Tex.App.—Eastland 1991, pet. ref'd); *see also Gongora v.*

---

**2.** Generally, the "totality of the representation" standard is associated with *Ex parte Duffy* and allegations of ineffective assistance during the punishment phase. *See, e.g., Valencia v. State*, 946 S.W.2d 81, 83 (Tex.Crim.App.1997); *Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). However, the Court of Criminal Appeals has held on several occasions that the "totality of the representation" standard should also be employed when evaluating counsel's effectiveness under the *Strickland* test. *See, e.g., Ex parte Kunkle*, 852 S.W.2d 499,

504–05 (Tex.Crim.App.1993); *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992). *Strickland* applies to counsel's conduct at guilt-innocence in all criminal trials and in the punishment phase of capital trials. *Valencia*, 946 S.W.2d at 83.

**3.** Because Peña–Mota's second point challenges counsel's effectiveness in the punishment phase, we will examine counsel's conduct in that phase when we consider his second point.

*State*, 916 S.W.2d 570, 576–77 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). A conviction for both offenses runs afoul of the double jeopardy provisions of our federal and state constitutions. *See Gongora*, 916 S.W.2d at 577; *cf. Smith v. State*, 873 S.W.2d 773, 775 (Tex.App.—Fort Worth 1994, no pet.); *Toro v. State*, 780 S.W.2d 510, 512 (Tex.App.—San Antonio 1989, no pet.); *Torrez Diaz v. State*, 762 S.W.2d 701, 704 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) (latter three decisions holding no double jeopardy violation where separate quantities of cocaine established for each offense).

In the present case, the indictment alleges the three offenses in pertinent part as follows:

Count One: Peña–Mota actually transferred more than 400 grams of cocaine to King's fellow officer;

Count Two: Peña–Mota delivered more than 400 grams of cocaine to King "by constructively transferring said controlled substance"; and

Count Three: Peña–Mota possessed more than 400 grams of cocaine with intent to deliver it.

The State's evidence focuses on Peña–Mota bringing 481.21 grams of cocaine to King's vehicle and placing it on the seat beside his fellow undercover officer, who in turn handed the cocaine to King. The State argued to the jury that this evidence proves Peña–Mota actually delivered the cocaine to King's fellow officer, that he constructively delivered it to King via his fellow officer, and that he possessed the cocaine with intent to deliver it to King.

The first and third of these offenses are lesser-included offenses of the second. By proving that Peña–Mota constructively delivered the cocaine to King, the State necessarily proved that he had actually delivered the same cocaine to King's fellow officer and that he possessed the cocaine with the intent to deliver it. *See Mello*, 806 S.W.2d at 878. Accordingly, Peña–Mota's conviction for all three offenses violates the principles of double jeopardy. *See Smith*, 873 S.W.2d at 775;

*Toro*, 780 S.W.2d at 512; *Torrez Diaz*, 762 S.W.2d at 704.

As we have previously stated, an indictment does not violate double jeopardy merely by alleging a primary offense and lesser-included offenses. In this situation, however, the State must elect the offense upon which it will proceed, or the court must instruct the jury in some fashion that a conviction may be had on only one of the offenses alleged. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim.App.1998).

In Peña–Mota's case, counsel should have objected to the court's charge because it authorized the jury to convict him of the primary offense and two lesser-included offenses. Counsel failed to do so, and as a result, the jury convicted Peña–Mota of three offenses which are the "same" for double jeopardy purposes. *See Landers v. State*, 957 S.W.2d 558, 559 (Tex.Crim.App.1997).

Having reviewed the totality of counsel's representation, we conclude that the instances of conduct during guilt-innocence identified in Peña–Mota's brief do not demonstrate ineffective assistance of counsel. However, we have concluded that counsel rendered ineffective assistance in one instance not raised by Peña–Mota, which resulted in a double jeopardy violation. Accordingly, we sustain Peña–Mota's first point in part and overrule it in part.

## THE PUNISHMENT PHASE

Peña–Mota's second point challenges counsel's performance during the punishment phase. He raises the same instances of conduct discussed above in connection with the first point. In addition, he suggests counsel rendered ineffective assistance during the punishment phase by:

• failing to attempt to rehabilitate two venire panelists whom the State successfully challenged for cause because they "indicated some hesitation when questioned regarding their ability to assess punishment"; [4]

---

4. Alleged "voir dire error regarding a subject that a jury would consider only during the punishment phase of a trial is 'error affecting pun-

ishment only.'" *Ransom v. State*, 920 S.W.2d 288, 298 (Tex.Crim.App.1996) (op. on reh'g).

- questioning the venire on community supervision even though Peña–Mota would not be eligible if convicted of delivering the quantity of cocaine alleged;

- indirectly telling the jury there was reason to fear Peña–Mota when counsel sternly admonished King during cross-examination not to call drug dealers from his home phone for the safety of his family;

- being confused about the applicable range of punishment as evidenced by counsel's questioning of Peña–Mota;

- informing the jury in closing argument that he had admonished Peña–Mota at length not to testify; and

- essentially inviting the jurors in argument to assess whatever fine they might because it would "never be paid anyway."

Concerning counsel's decision not to attempt to rehabilitate the two challenged venire members, we have already stated that we will not second-guess such a decision. *See McFarland*, 928 S.W.2d at 504.

■ Peña–Mota suggests that counsel's asking a venire member whether he could consider community supervision as a punishment alternative indicates counsel did not understand the application of the community supervision laws in his case. Peña–Mota asserts that if counsel had possessed a correct understanding of the applicable community supervision law, he may have elected to plead guilty to the court because the court in theory could have granted unadjudicated community supervision in this case.

■ To succeed on a claim of ineffective assistance based on counsel's failure to properly inform a defendant about eligibility for community supervision, the defendant bears the burden of demonstrating:

- he was initially eligible to receive community supervision;

- counsel's advice not to plead guilty was not provided pursuant to a valid trial strategy;

- his decision to have the jury assess punishment was based on counsel's erroneous advice; and

- his decision would have been different had counsel correctly advised him of the applicable law.

*See State v. Recer*, 815 S.W.2d 730, 731–32 (Tex.Crim.App.1991).

Peña–Mota was eligible for unadjudicated community supervision. *Cabezas v. State*, 848 S.W.2d 693, 695 (Tex.Crim.App.1993). However, Peña–Mota has not presented a record focusing on counsel's conduct and the strategical bases for counsel's trial decisions. *See McWhorter*, 957 S.W.2d at 931; *Davis*, 930 S.W.2d at 769. Thus, we cannot meaningfully address whether counsel's decision not to encourage Peña–Mota to enter a guilty plea was provided pursuant to a valid trial strategy.

Moreover, Peña–Mota does not state he *would* have pleaded guilty had he known he might receive unadjudicated community supervision from the court. *See Recer*, 815 S.W.2d at 732. Rather, he asserts that "there exists a reasonable probability that" he "*might* have elected to have the trial court . . . assess punishment" or he "*might* have elected to attempt a plea negotiation with the State." (emphasis added). Accordingly, he has not sustained his burden of proving he *would* have pleaded guilty to the court in order to receive unadjudicated community supervision had he known he was eligible to be considered for it. *Id.*

The State responds that counsel's admonishing of King not to call drug dealers from home and his statement in argument that he had told Peña–Mota he should not testify both fall within the trial strategy discussed above. Because Peña–Mota has not presented a record focusing on counsel's conduct, we cannot meaningfully address these allegations of ineffective assistance. *See McWhorter*, 957 S.W.2d at 931; *Davis*, 930 S.W.2d at 769.

Peña–Mota avers counsel's questioning of him regarding the applicable range of punishment evinces confusion on counsel's part about the applicable range. Counsel asked Peña–Mota if he knew what he could be

349

sentenced to. Peña–Mota responded, "You told me. What you told me [sic] while ago. Thirty-five years, that's the most." Counsel then asked, "Didn't I tell you that you could go to prison from 15 to 99 years or life?" Peña–Mota answered, "Yes, sir."

The evidence recited demonstrates confusion on the part of Peña–Mota (not counsel) about the applicable range of punishment. We could only speculate as to why Peña–Mota initially testified that counsel told him thirty-five years was the maximum he could receive. This we will not do. *See Jackson*, 877 S.W.2d at 771.

 Peña–Mota argues that counsel rendered ineffective assistance by inviting the jury in closing argument to assess any fine it wanted because the "money will never be paid anyway." A review of the pertinent argument indicates counsel was explaining to the jury that upon release from prison Peña–Mota will be deported to Mexico. Counsel asked the jury twice to assess a fine of only one dollar apparently because his client would not be permitted upon parole to gain employment within the United States and repay the fine.

The content of counsel's closing argument is apparently based on strategical considerations. We could only speculate as to the precise strategical reasons counsel argued in this manner to the jury. This we will not do. *Id.*

None of the punishment issues raised in Peña–Mota's brief convince us that he received ineffective assistance during the punishment phase. We could speculate that by being permitted to find Peña–Mota guilty of three offenses rather than one, the jury was inclined to punish him more severely. However, in light of the overwhelming evidence of his guilt and the evidence that he had previously sold more than 300 grams of cocaine and significant quantities of marihuana to King within the thirty days leading up to the offense for which he was tried, we conclude he received "reasonably effective assistance of counsel" in the punishment phase. *Duffy*, 607 S.W.2d at 516. Accordingly, we overrule Peña–Mota's second point.

## CONCLUSION

In most cases where counsel has rendered ineffective assistance which prejudices his client, we reverse for a new trial. Counsel's deficient performance usually dictates this result because it has prejudiced the client to the extent that he did not receive a fair trial. In this case however, we are convinced Peña–Mota did receive a fair trial on the questions of his guilt and punishment.

When a jury has been improperly permitted to convict an accused of a greater offense and a lesser-include offense, "[t]he proper remedy is to reform the judgment by vacating the lesser conviction and sentence." *Ochoa*, at 909. We have already explained that Peña–Mota's conviction for the constructive delivery of cocaine to Officer King alleged in the second count of the indictment is the greater offense. Accordingly, we affirm this conviction and vacate the lesser convictions for delivery of cocaine alleged in the first count and possession with intent to deliver alleged in the third count. We affirm the judgment as modified.

CUMMINGS J., not participating.