

## NUMBER 13-22-00553-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF T.N.J., A CHILD

**On appeal from the 25th District Court
of Gonzales County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Tijerina**

Appellant K.M.J. (Father) appeals the termination of his parental rights to his child, T.N.J.[1] In his sole issue, Father argues he received ineffective assistance of counsel during trial. We affirm.

### I.     BACKGROUND

The Texas Department of Family and Protective Services (Department) presented

---

[1] We use initials to protect the identity of the children. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

evidence supporting its petition to terminate Father's parental rights through testimony from Meagan Morales, a conservatorship caseworker; Kelsey Koenig, a family-based services caseworker; and Esther Mitchell, a court-appointed special advocate.

Morales testified that T.N.J. is currently thirteen years old and lives with her maternal grandmother.[2] Morales testified that T.N.J. was very aggressive, and she was having suicidal and homicidal ideations. T.N.J. received services at a psychiatric hospital, was currently receiving medication, and was seeing a therapist.

Morales testified that Morales has never had contact with Father because he was incarcerated and serving a seventy-five-year prison term with a projected release date of October 24, 2084. Morales explained that Father was denied parole in June of 2022, due to his criminal history, the nature of the offense committed, drug or alcohol involvement, unsuccessful periods of supervision, and adjustments under periods of supervision. According to Morales, Father was convicted for aggravated assault with a deadly weapon, burglary of a building, and unlawful possession of a firearm by a felon with two prior convictions. Morales stated that T.N.J. had not seen Father in over nine years and did not have a relationship with Father. Furthermore, Father did not identify any family members that could potentially care for T.N.J. in his absence.

Morales stated that T.N.J. was very bonded with her grandmother, has lived with her for over ten years, and feels at home with her. In fact, according to Morales, T.N.J. wishes to be adopted by her grandmother. Morales believed T.N.J.'s grandmother is capable of meeting T.N.J.'s needs and is providing for her needs daily.

---

[2] T.N.J.'s mother voluntary relinquished her parental rights.

According to Morales, because Father had been incarcerated for the majority of T.N.J.'s life and is currently incarcerated, Father is unable to provide a safe and stable home for T.N.J. Morales opined that it was in T.N.J.'s best interest to terminate Father's rights.

Koenig testified that Father did not participate in the creation of his family-based services plan due to his incarceration. According to his family service plan, Father was required to complete parenting classes, a psychological evaluation, participate in random drug testing should he be released from prison, follow up with medical and mental health providers, and complete a batterer's intervention prevention program. To Koenig's knowledge, Father did not complete the requirements of his family service plan.

Koenig further testified that she did not receive any phone calls or letters from Father regarding the required services. Koenig believed it was in T.N.J.'s best interest to terminate Father's rights because T.N.J. had expressed to her that she is very bonded with her grandmother and that she did not have a relationship with Father. Because T.N.J. expressed a desire to stay with her grandmother long-term and Father had never provided for T.N.J. in any meaningful way, Koenig believed Father's rights should be terminated.

Mitchell testified that she has observed T.N.J.'s relationship with her grandmother. Grandmother is "working hard to make things really good for T.[N.]J." as her sole caregiver. She believes T.N.J. really cares for her grandmother and believes that it is in T.N.J.'s best interest to terminate Father's rights because "[s]he really needs to be set in one place" and know "that nothing's going to happen" that things "could possibly change." Mitchell further stated that grandmother has taken T.N.J. to all her therapist appointments,

3

school appointments, and is providing for her financially and psychologically.

Father testified that he has two sisters that may be possible placements for T.N.J. On cross-examination, Father admitted that he "got locked up when [T.N.J.] was 21 days old," but for those 20 days, he "was providing for [T.N.J.]," he worked, and lived in an apartment.

The trial court terminated Father's rights pursuant to Texas Family Code § 161.001 subsections (N), (O), (Q) and found that doing so was in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (Q). Father appeals.

## II. STANDARD OF REVIEW

We evaluate claims of ineffective assistance of counsel in parental-rights termination cases under the two-prong *Strickland* test set forth by the United States Supreme Court for criminal cases. *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under this test, Father must show both that (1) his attorney's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense. *Id.* at 545; *see Strickland*, 466 U.S. at 687; *see also In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (following the two-prong *Strickland* test).

In analyzing whether counsel's performance was deficient, we take into "account all of the circumstances surrounding the case" and "primarily focus on whether counsel performed in a reasonably effective manner." *In re M.S.*, 115 S.W.3d at 545 (internal quotations omitted); *see In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). We "give great deference to counsel's performance, indulging a strong presumption that counsel's

4

conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *In re M.S.*, 115 S.W.3d at 545 (internal quotations omitted); *see In re H.R.M.*, 209 S.W.3d at 111. "An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *In re K.K.*, 180 S.W.3d 681, 685 (Tex. App.— Waco 2005, no pet.); *see also In re A.A.H.*, Nos. 01-19-00612-CV & 01-19-00748-CV, 2020 WL 1056941, at *21 (Tex. App.—Houston [1st Dist.] Mar. 5, 2020, pet. denied) (mem. op.). Thus, when the record is silent regarding counsel's reasons for his conduct, as it is here, we defer to counsel's decision if there is at least the possibility that the conduct could have been legitimate trial strategy. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). "Challenged conduct constitutes ineffective assistance only when it is so outrageous that no competent attorney would have engaged in it.*" In re H.R.M.*, 209 S.W.3d at 111 (citation omitted).

To satisfy the second prong of the *Strickland* test, the record must show that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *In re M.S.*, 115 S.W.3d at 549–50; *see Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *see also Medellin v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-11-00558-CV, 2012 WL 4466511, at *4 (Tex. App.—Austin Sept. 26, 2012, pet. denied) (mem. op.) (requiring parent to show that there was "a reasonable probability that his parental rights would not have been terminated" (citing *Strickland*, 466 U.S. at 694)). However, we need not address the prongs in order or even address both components if

Father makes an insufficient showing on one prong. *Strickland*, 466 U.S. at 697.

### III. ANALYSIS

First, Father argues that appointed counsel's performance was deficient because counsel waived his opening statement and closing arguments, and counsel failed to object throughout trial. On direct appeal we are unable to determine whether trial counsel's actions of waiving opening statement, waiving closing arguments, and failing to object were grounded in sound trial strategy because the record is undeveloped and cannot adequately reflect the merits of an ineffective assistance of counsel claim. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *In re L.C.W.*, 411 S.W.3d 116, 128 (Tex. App.—El Paso 2013, no pet.). Father does not point to specific places in the record where objections were warranted, and "it is not ineffective assistance for counsel to forego making frivolous arguments and objections." *Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009). Waiving an opening statement can also be a tactical decision, as doing so prevents the opposing party from getting a preview of the waiving party's strategy. *See Standerford v. State*, 928 S.W.2d 688, 697 (Tex. App.—Fort Worth 1996). Similarly, the content of a closing argument and whether to give a closing argument at all are inherently strategic decisions. *See Pena-Mota v. State*, 986 S.W.2d 341, 345–46 (Tex. App.—Waco 1999, no pet.); *see also Leigh v. State*, No. 06-01-00198-CR, 2002 WL 313006645, at *4 (Tex. App.—Texarkana Oct. 16, 2002, pet. ref'd) (mem. op., not designated for publication).

It was Father's burden to overcome the presumption that the challenged conduct might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689. Because the

record reflects that Father's ineffective assistance claim is not firmly founded in the record, we conclude that he failed to satisfy the first prong of the two-pronged test. *See id.; Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (providing that review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation).

Next, Father argues that there was "no communication between [Father] and his trial counsel prior to the trial."[3] However, the record provides that Father requested to speak to his trial counsel prior to the commencement trial. The trial court placed them in a "breakout room" while Father and trial counsel conferred off the record. Thus, Father had contact with his trial counsel before the commencement of trial. *See In re H.R.M.*, 209 S.W.3d at 111 (providing that challenged conduct must be "so outrageous" that no competent attorney would have engaged in it). Furthermore, nothing in the record supports a contention that the breakout room interaction was the first time Father spoke with his attorney.

Even assuming that Father satisfied the first prong of the *Strickland* test, he has failed to meet the second prong of *Strickland* showing prejudice because he failed to show that, but for his attorney's alleged deficient performance, the outcome of the proceeding would have been different. *See In re M.S.*, 115 S.W.3d at 550 (providing that a party is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different"). Father does not state

---

[3] We note that proceedings in this case were done remotely pursuant to the Supreme Court of Texas's emergency orders regarding COVID-19, and trial counsel represented Father during various proceedings.

the alleged errors caused him harm, does not explain *how* the alleged deficient performance caused him harm, or why the result of this termination proceeding would have been different but for the complained-of errors and omissions. *See id.* Instead, the evidence demonstrated that T.N.J. is currently living with her grandmother and wishes to be adopted by her, Father did not support T.N.J., Father had no contact with her, Father was serving a seventy-five-year prison term, Father did not have a bond with T.N.J., and Father is unable to provide her with a safe and stable home. *See In re C.L.E.E.G.*, 639 S.W.3d 696, 699 (Tex. 2022) (holding that there was sufficient evidence to support the trial court's finding of clear and convincing evidence that father, who was incarcerated, would be unable to care for child for at least two years from the date the Department sought to terminate his parental rights). Father does not explain how, on this record, counsel's conduct prejudiced him. *See Thompson*, 9 S.W.3d at 813. We conclude that Father has failed to meet his burden under the second prong of *Strickland* because he failed to show that but for the complained-of conduct of his attorney, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. We overrule his sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
23rd day of February, 2023.

8